GEORGE D. MANN, Respondent, v. BEATRICE MANN, Appellant, and BISMARCK TRIBUNE COMPANY, a Corporation, Intervener and Respondent.

(223 N. W. 186.)

Opinion filed January 19, 1929.

*Burdick, Shaft & Burk, Lovell & Horner, Dullam, Young & Burke,* and *George A. Bangs,* for appellant.

*Sullivan, Hanley & Sullivan* and *Zuger & Tillotson,* for respondent.

Burr, J. "The Bismarck Tribune Company is a North Dakota corporation with assets approximately $300,000, liabilities negligible, and capitalized stock of $25,000 divided into 250 shares of $100." This statement from defendant's brief is a succinct description of the corporation at the time of the commencement of this action. The defendant held 248 shares of this stock, her sister held one share, and the plaintiff held the remaining share.

In a property settlement, incidental to a divorce proceeding, the defendant agreed to purchase her sister's share of stock and sell this together with her own holdings to the plaintiff, thus vesting in him the sole ownership of the corporation, and in consideration therefor the plaintiff agreed to deliver to the defendant valid bonds of the corporation in the sum of $165,000—the bonds to be amortized so as to pay $6,000 principal and interest semi-annually and "secured by first mortgage on all the real and personal property of the company." The surplus of the corporation at this time amounted to some $200,000, there were no creditors, and no stockholders other than the ones heretofore mentioned. The defendant secured the stock held by her sister

and transferred this together with her stock to the plaintiff. The plaintiff tendered to the defendant, in consideration for this transfer of stock, $165,000 in bonds of the corporation in compliance with the terms agreed upon between the parties. At the time of this agreement the life expectancy of the corporation was less than the time allowed for the maturity of the bonds. It is agreed between the parties that the bonds on their face as issued and delivered to the defendant are strictly in accordance with the agreement; but under the contract the "legality of the bond issue on which said bonds . . . are based shall be passed upon by counsel for the defendant." Counsel for the defendant being doubtful as to the validity of the bonds the defendant declined to receive them. Thus the validity of the bond issue is the matter in dispute for if the bonds be valid plaintiff has complied with his contract and the defendant should accept them.

. The plaintiff, the defendant, and the defendant's sister were the directors of the corporation. Upon the transfer of the stock to the plaintiff he became the sole owner of the corporation. There being no debts he could handle the property as he saw fit. He was entitled to the surplus, could continue the corporation or he could wind it up. In order to comply with the statute of this state, requiring three directors for the corporation, the plaintiff transferred one share of stock to Archie Johnson, and one share of stock to Frank Ellsworth and thus there were three stockholders. These stockholders met and elected themselves directors and officers of the corporation. They held a meeting for the purpose of issuing the bonds, in order to permit the plaintiff to carry out his agreement with the defendant. Accordingly the bonds were issued and all of the necessary legal requirements followed; but plaintiff still owned the company.

The validity of the bonds is not attacked by the corporation itself, nor by a stockholder, nor by a creditor. The defendant is not a creditor of the corporation. She has no interest in the corporation and claims none other than as the holder of these bonds if they are to be accepted by her.

The bonds were in fact issued, all necessary steps were taken and the corporation was such a one as could borrow money and issue bonds. Hence this act was not ultra vires in the strict sense of the term. The term ultra vires is used in different senses. In the real primary sense

it refers first to the state, "meaning an act which transcends the powers conferred by law on the corporation—something which is not within the scope of the powers of a corporation to make under any circumstances, or for any purpose." Minnesota Thresher Mfg. Co. v. Langdon, 44 Minn. 41, 46 N. W. 312. Frequently the term is used also in the case of contracts which in general the corporation could make but which are imperfect or defective because of some irregularity or defect in the actual exercise of its powers insofar as the particular contract is concerned. The issuance of bonds by this corporation is not an ultra vires act in itself. Therefore a bond issue is not absolutely void.

Defendant says the bonds tendered her are invalid because "the proposed bond issue is in excess of the capital stock of the Bismarck Tribune Company" and therefore in violation of § 4543 of the Supplement which says: "The directors of corporations must not . . . create debts beyond the subscribed capital stock." The statute does not say that such debts are void and therefore would imply they are debts of the corporation when contracted. It is a limitation on the power of the directors and a violation thereof would subject the directors to a suit at the hands of the stockholders, but the debts are not necessarily void. In the case of Underhill v. Santa Barbara Land, Bldg. & Improv. Co. 93 Cal. 300, 28 Pac. 1049, the court construed an identical provision in the California case and held:

"Though the notes and mortgages were given for a debt larger than the subscribed capital stock of the corporation, their execution was not prohibited by Civil Code, No. 309, forbidding directors of corporations from creating debts beyond the subscribed capital stock, and for a violation of this provision making the directors who create such debts jointly and individually liable to the corporation."

See also Sells v. Rosedale Grocery & Commission Co. 72 Miss. 590, 17 So. 236; Ossipee Hosiery & Woolen Mfg. Co. v. Canney, 54 N. H. 295; Hawke v. California Realty & Constr. Co. 28 Cal. App. 377, 152 Pac. 963; 14 C. J. 574. Of course the defendant knew when she agreed to take the bonds that she was contracting for bonds in excess of the capital stock of the company. The defendant not being a stockholder or a creditor of the corporation is not in position to raise this question and in any event we do not think such violation of the statute invali-

dates the bonds. The bonds are valid if the plaintiff or her assignees can enforce them against the corporation, and if the corporation and stockholders be estopped from raising the question of the validity of their own acts then so far as the defendant is concerned the bonds are good.

As a general rule whatever will estop the stockholders will estop the corporation and whatever will estop the corporation will estop stockholders. See Thomp. Corp. § 5269; Omaha Hotel Co. v. Wade, 97 U. S. 13, 24 L. ed. 917; Union P. R. Co. v. Chicago, R. I. & P. R. Co. 163 U. S. 564, 41 L. ed. 265, 16 Sup. Ct. Rep. 1173. In this later case cited it was held that new stockholders,—that is the stockholders who bought into the corporation after the acts complained of had been committed and were known—had no standing in the court to test the validity of the act done and therefore the corporation could not recover as for them. Hence subsequent stockholders of this corporation can not attack the validity of this bond issue.

"The stockholders are the equitable owners of the corporate property and if the officers or trustees do an unauthorized act, or issue indebtedness which would not create a corporate liability the stockholders may subsequently ratify the acts, and validate the originally unauthorized transaction." Martin v. Niagara Falls Paper Mfg. Co. 122 N. Y. 172, 25 N. E. 305. See also Taylor Feed Pen Co. v. Taylor Nat. Bank (Tex. Civ. App.) 181 S. W. 538, where it is said that "a corporation will be estopped to plead ultra vires to an act within the scope of its power where all of its stockholders assented to such act." In the case at bar all of the stockholders met and ratified this bond issue and therefore the present stockholders are estopped from denying the validity.

Nor could the corporation subsequently act for new stockholders in an attack on this bond issue. In Home F. Ins. Co. v. Barber, 67 Neb. 644, 60 L.R.A. 927, 108 Am. St. Rep. 716, 93 N. W. 1024, the defendant had borrowed the money of the corporation to purchase the stock of the company, and secure the accruing dividends. Seven years afterwards he sold the stock to the new stockholders. In the meantime the stock had risen in value. These new stockholders desired to get the results of this increase and the dividends declared thereon and the corporation brought suit against the defendant for their benefit. It

was held the new stockholders had no standing, therefore the corporation could not recover for them.

It is conceded there are no creditors of the company. Of course persons who subsequently extend credit to the corporation with knowledge of this bond issue are not in position to attack the validity. See Marsters v. Umpqua Valley Oil Co. 49 Or. 374, 12 L.R.A.(N.S.) 825, 90 Pac. 151; Osborn v. Montelac Park, 89 Hun, 168, 35 N. Y. Supp. 10.

The plaintiff was entitled to the surplus. It is the same as if the corporation had paid the sum to him in cash, and he had loaned it to the company thereafter, or he had issued his own certificate of indebtedness. The company had the right to borrow money and issue bonds as a general proposition. This contract is not between the defendant and. the corporation but between plaintiff and the corporation primarily. The corporation, having issued these bonds is required to observe good faith and fair dealing for as said in the case of Louisville, N. A. & C. R. Co. v. Flanagan, 113 Ind. 496, 3 Am. St. Rep. 674, 14 N. E. 374 "the rule requiring the observance of good faith and fair dealing is as applicable to corporations as to individuals." And in Taylor Feed Pen Co. v. Taylor Nat. Bank, supra, it is said "a corporation would be estopped in a suit between itself . . . or third persons the same as individual persons."

Defendant says such bonds are issued in violation of § 138 of the Constitution of this state which says: "No corporation shall issue . . . bonds except for money, labor done, or money or property actually received and all fictitious increase of stock or indebtedness shall be void . . .," and therefore there is no consideration for the issue. There is nothing fictitious about the indebtedness. Under the arrangements made by the Board of Directors, and the records of the corporation pursuant thereto .the amount of the bonds is deducted from the surplus and therefore the bond issue is equivalent to a payment of the surplus to the plaintiff as holder of stock and entitled to dividends and the borrowing of this amount by the corporation. This is in harmony with the agreement between the parties, and must have been within their contemplation. It is clear the company is a "one man corporation." The object of the settlement is to place the ownership and the management of the corporation in the hands of the plain-

tiff, and at the same time to secure to the defendant her agreed share under the property settlement in the divorce action. We see no reason why the company could not borrow money from one of the directors—from the real owner of the corporation—and issue bonds for the amount borrowed. If it desired to reduce its surplus by distribution of its funds, instead of paying cash it could give its certifiacte of indebtedness therefor, especially when all parties interested in the corporation are not only satisfied with the arrangement but are active participants therein and there is no one to question the validity on this score. As said by the Supreme Court of California in the case of Wenban v. Hewlett, 193 Cal. 675, 227 Pac. 723:

"Generally a corporation is an entity separate from its stockholders, with distinct liabilities and obligations, but when necessary to prevent fraud and protect third persons' rights or prevent a palpable injustice, law and equity will interfere and cast aside the legal fiction of corporate existence and deal with the corporation and its stockholders as identical entities, with identical duties and obligations.

"Upon a showing that a corporation is but an instrumentality through which an individual, who is sole owner of all corporation capital stock, for convenience, transacts his business, equity, looking to the substance, and the law as well, will hold such corporation obligated for acts of the sole owner to the same extent as though the corporation did not exist."

In any event this case does not differ in essence from a case where a debtor issues his notes and gives a mortgage on his own property, for the property of the corporation is his own. The parties have adopted a method satisfactory to themselves for the carrying on of the business and to effect a division of property.

The third main objection is that no notice of stockholders' meeting to issue bonds was given. But the record shows all stockholders and directors were present at the meeting, met for the expressed purpose of issuing the bonds as agreed upon, and all approved the transaction. In such a corporation as this, where the transaction is for the benefit of the real owner of the corporation, a subsequent lien creditor cannot attack as the rule urged is for the benefit of the corporation and the stockholders. All consenting they are estopped from invoking the rule. Marsters v. Umpqua Valley Oil Co. supra.

It is said that under the terms of the agreement some of the bonds will not become due until after the time when the charter of the corporation expires. The defendant knew this at the time she entered into the agreement, that is she knew she had agreed to accept the bonds which would not be due until after the time limit of the corporation of which she was a member. Therefore it must be conceded that it was within the contemplation of the parties that in such an event steps would be taken to protect their several interests. In the case of Union P. R. Co. v. Chicago, R. I. & P. R. Co. supra, it is held that a contract entered into by a corporation and extending beyond the time when the charter of the corporation would expire by its terms is not for that reason invalid, especially when it was within the contemplation of the parties that proper steps would be taken to protect the interests.

So far as the defendant is concerned these bonds are valid. Neither the corporation, stockholders nor creditors can attack them. All would be estopped from denying the validity and being enforceable they are such bonds as are within the contemplation of the agreement and contracts between the parties.

In the judgment entered by the district court notice was taken of the property settlement made by the parties to this action. This settlement was incorporated by the court in its judgment and the bonds tendered were considered as being in harmony with the agreement. Judgment was entered by the court holding these bonds to be valid. It is from this portion of the judgment the defendant appeals. The judgment of the lower court is affirmed.

BURKE, Ch. J., and CHRISTIANSON, NUESSLE, and BIRDZELL, JJ., concur.