U. L. BURDICK, Respondent, v. BEATRICE MANN, Appellant.

(236 N. W. 340.)

Opinion filed April 25, 1931.

*F. O. Hellstrom* and *H. A. Mackoff,* for appellant.

*William Langer,* for respondent.

McKenna, Dist. J. Plaintiff instituted this action to recover the sum of $10,000, the alleged reasonable value of professional services which plaintiff claims to have rendered the defendant at her special instance and request in his capacity as attorney and counselor at law.

The answer of the defendant, while admitting the employment of the plaintiff as her attorney, denied the value of the services, and set up a counterclaim, alleging that she had been damaged by the carelessness and negligence of the plaintiff in handling her litigation in the sum of $173,000. The jury found against the defendant upon her counterclaim, and returned a verdict in favor of the plaintiff in the sum of $9,000.

The record discloses that in the year 1917 the defendant and George D. Mann were husband and wife, and at that time purchased at a receiver's sale the newspaper and publishing business known as the "Bismarck Tribune," for the sum of $13,600. The sum of $6,500 for the purchase of the property was advanced by the defendant, and this was later repaid to her from the profits of the Bismarck Tribune Company. The balance of the purchase price was likewise paid from time to time from the profits of the business. Mr. and Mrs. Mann then organized the Bismarck Tribune Company, a corporation, with a capital stock of $25,000, divided into 250 shares of the par value of $100 each. The incorporators of the Bismarck Tribune Company were the defendant and her husband and her sister, Minnie Ostrander, and they were the sole stockholders. Two hundred forty-eight shares of stock were issued in the name of the defendant, one share in the name of her sister and one share in the name of her husband. Her stock certificate, however,

remained in the stock book, and was never withdrawn by her until October, 1927, when some difficulty arose between her and her husband. George D. Mann was the president and general manager of the company, the defendant was secretary and treasurer, and the three stockholders constituted the board of directors. From 1917 to 1924 the defendant took a more or less active part in the business. From 1924 to 1927 the defendant spent a large portion of the time in Boston, Massachusetts, because of the illness of her daughter and because of her desire to educate her daughter and her foster daughter. The business of the Bismarck Tribune Company had grown by leaps and bounds, so that for a number of years prior to 1927 the defendant and her husband were each drawing from the business $200 a week, and the profits were approximately $40,000 to $60,000 a year. In 1927 the fiscal valuation of the Bismarck Tribune Company was about $309,000, $50,000 of which was for the good will of the business and $25,000 for the Associated Press franchise.

In October, 1927, George D. Mann commenced an action in the district court of Burleigh County to restrain the defendant from interfering with the business of the Bismarck Tribune Company, and to determine the ownership of the stock. And it was at this time that the defendant first employed the plaintiff, Mr. Burdick, as an attorney to look after her interests.

The evidence shows that at the time of the trial the plaintiff was 50 years of age; had been a resident of North Dakota for 48 years; was a graduate of the University of Minnesota; had been engaged in the active practice of law in North Dakota for 25 years; was a member of the State Legislature in 1907; Speaker of the House in 1909; Lieutenant Governor in 1911; State's Attorney of Williams county for 6 years; and was then Assistant United States District Attorney at Fargo, and general counsel for the Farmers Union, with a law office at Fargo and a branch office at Williston, North Dakota.

On October 17, 1927, the plaintiff came to Bismarck at the solicitation of the defendant, and was employed by her as chief counsel to take care of all matters that might arise touching her property rights in the Bismarck Tribune Company, and also any further litigation that might be commenced. Judge Jansonius had issued a restraining order in the injunction suit, restraining the defendant and her auditor, Mr.

Luehe, of Minot, from interfering in any way with the business of the Bismarck Tribune Company. The plaintiff secured a modification of this order, allowing an audit to be made, but the original injunction restraining the defendant from appearing in the Bismarck Tribune Company plant or taking part in the management of its affairs continued in force. It was about this time that the defendant withdrew from the stock book the certificate of stock issued in her name for 248 shares. A few days later George D. Mann commenced an action for divorce against the defendant, and the plaintiff, as attorney, appeared for the defendant and served an answer in the case. There was an amended complaint in the divorce proceedings, and also an amended answer and a cross-bill filed by the defendant in which she asked for a divorce. From this time until February, 1928, there were numerous consultations between the plaintiff and the defendant in reference to her rights, and in reference particularly to a possible settlement of the divorce proceedings and her property rights. During this period other counsel had also been employed to look after the defendant's interests and to assist Mr. Burdick, namely, the firm of Lovell & Horner, of Fargo, the firm of Dullam, Young & Burke, of Bismarck, and George A. Bangs, of Grand Forks. Both the injunction suit and the divorce suit came up for trial before Judge C. W. Buttz at Bismarck about the 13th of February, 1928. George D. Mann was represented by the firm of Sullivan, Hanley & Sullivan, of Mandan, and Zuger & Tillotson, of Bismarck. Numerous consultations were had between the attorneys, and finally on February 17, 1928, a stipulation of settlement was made, by which it was agreed that the defendant was to receive from George D. Mann the sum of $165,000, secured by a bond issue upon the entire property and plant of the Bismarck Tribune Company, at the rate of 5% per annum. The bonds were payable at the rate of $6,000 every six months for a period of 23 years, making an aggregate of $278,000. In addition, the defendant received the family home at Bismarck and its contents, worth from $30,000 to $35,000, the family Cadillac automobile, valued at about $1,500; and was awarded the custody of her minor daughter, Eleanor Mann. Defendant was permitted to prove up her divorce action, securing a divorce on the grounds of cruelty and inhuman treatment. There being some question as to the validity of these bonds, the plaintiff instituted proceedings before Judge Buttz

to have their legality passed upon. Judge Buttz found in favor of the validity of the bonds, and the matter was appealed to the supreme court, and the decision affirmed. See Mann v. Mann, 57 N. D. 550, 223 N. W. 186.

On this appeal the defendant has set forth a large number of specifications of error. But for the sake of convenience and brevity we shall group these as follows:

(1) The alleged error of the trial court in advancing the case ·upon the calendar over the objection of the defendant; in refusing the application of the defendant to continue the case over the term, and in denying the motion of the defendant to abate the action.

(2) Error of the trial court in overruling the objection of the defendant to the introduction of any testimony, for the reason that the plaintiff·had failed to furnish a bill of particulars upon demand.

(3) Errors of the trial court in the admission and rejection of testimony; the action of the trial court in participating in the examination of witnesses, and the misconduct of counsel for the plaintiff in the asking of prejudicial questions.

(4) Error at the trial in the reception of the testimony of expert witnesses as to the value of the plaintiff's services.

(5) Errors in ·the instructions of the court.

(6) Insufficiency of the evidence to justify the verdict, and the excessive amount of the verdict.

We shall take up these specifications of error in their order.

Under specification number 1 herein, it appears from the record that the case was regularly on the trial calendar for the December term of court which opened at Bismarck on the 9th of December, 1929, Hon. R. G. McFarland, Judge, presiding. At the call of the calendar this action was given number 53 on the call of civil jury cases. On December 17, 1929, William Langer, as attorney for the plaintiff, served a notice of motion, returnable December 18, 1929, that he would ask the court to advance the case on the trial calendar, placing it for trial between the 26th of December, 1929, and the 6th of January, 1930, to accommodate certain material witnesses for the plaintiff, among them Hon. C. W. Buttz, of Devils Lake, Hon. Alfred Zuger, of Bismarck, and John F. Sullivan, of Mandan. This motion was heard before Judge McFarland on December 21, 1929, the court taking the matter under

advisement at that time and asking Mr. Langer to submit an additional affidavit covering certain statements made orally to the court but which had not been included in his moving papers. Counsel on both sides were present at the hearing, but no affidavits were filed in opposition to the motion, and the record before this court is silent as to what showing of resistance was made. It does not appear whether or not counsel for the defendant suggested any particular date for the setting of the case or that any delay was necessary to accommodate the defendant or her witnesses. On December 20, 1929, before hearing the motion in question, Judge McFarland excused the members of the jury panel, with the exception of the twelve on the case in which he was then engaged, until January 7, 1930, and on December 21, 1929, he recessed the term until January 7, 1930, subject to such business as might be legally brought before the court and excused the balance of the jury until that date. It was on this date also that he heard the plaintiff's motion and took it under advisement. On December 28, 1929, the additional and supplementary affidavit which Judge McFarland had requested the plaintiff's attorney to supply was presented to the judge at his chambers in Jamestown. In this affidavit specific attention is directed to the fact that a similar action was pending in Clay County, Minnesota, and that the case was set there for January 13, 1930, and upon information and belief it is stated that the Minnesota action was started for the reason that the plaintiff was unable to get service upon the defendant in North Dakota; that the Minnesota action could not be dismissed on account of the counterclaim filed by the defendant which she refused to dismiss; that the plaintiff desired to use as material witnesses a number of North Dakota lawyers (naming them), some of whom (also naming them) had actual knowledge of the transactions involved in the litigation between George D. Mann and the defendant; also that the affiant had communicated with Judge Buttz who had promised to attend and testify if the case should come on for trial on the 9th or 10th of January. Judge McFarland on the date he received this supplementary affidavit issued an order directing the clerk of court at Bismarck to reconvene the term and to recall the jury for service at 10 A. M. January 3, 1930. A copy of this order was mailed to Mr. Hellstrom, attorney for the defendant, at Bismarck on December 31, 1929, and received by him the same evening.

When the case was called for trial on January 3, 1930, Judge Grimson was presiding in place of Judge McFarland, and at Judge McFarland's written request under the statute. The defendant, through her counsel made a special appearance for the purpose of objecting to the jurisdiction of the court, the objections being that the jury panel called for the December term had been excused; that the term stood adjourned until the 7th day of January; that there had been no special term called meanwhile and no jury subsequently drawn in accordance with the law; that the order advancing the cause was arbitrary, in violation of sound discretion, "ultra vires, null and void;" that Minnie Ostrander, a resident of Los Angeles, California, was an important witness for the defendant, and that she could not safely go to trial without her testimony which it would be impossible to secure by January 3rd; that the presiding judge was not one of the judges of the second judicial district, nor one who had been designated by the supreme court. Judge Grimson overruled the objections. The defendant then filed an affidavit of prejudice against Judge Grimson and Honorable John C. Lowe of Minot was regularly designated by the supreme court. The defendant appeared before Judge Lowe on January 4th and made a further motion to nullify and vacate the order of Judge McFarland, supporting the same by an affidavit in all substantial respects identical with the one which had been presented to Judge Grimson in support of the objections to the jurisdiction of the court. This motion was denied by Judge Lowe. The defendant then moved for "an order to dismiss and abate the action" and showed in support thereof the pendency of the Minnesota action and that the same was set for trial on the 13th of January. This motion was likewise overruled, whereupon a motion for continuance was made by the defendant supported by an affidavit, again showing that it would be impossible to secure the testimony of Minnie Ostrander, showing that the Minnesota case had been set for trial on the 4th of December, 1929, and that upon a showing made by the plaintiff it was set for January 13, 1930; that the order setting this case for January 3rd had taken the defendant by surprise and that she could not safely proceed to trial. This motion was overruled, whereupon the defendant immediately served and filed notice of appeal, specifications of error and undertaking on appeal from the orders which had been entered denying the various motions. She applied to the court for an order

fixing the terms and conditions of a stay bond on appeal, which was likewise denied, and the case then proceeded to trial. The appeals from these orders were later heard and the supreme court in Burdick v. Mann, 59 N. D. 611, 231 N. W. 545, held the orders not appealable but that on appeal from the judgment the errors complained of could be reviewed in this court.

It is our view, upon a review of the record, that no error was committed by the trial court in ruling upon any of these motions, and we shall state our reasons briefly.

The general rule with reference to the right of the trial court to determine the order of trial of cases properly upon the calendar is stated in 38 Cyc. 1282, as follows: "A cause cannot be heard, in opposition to the wishes of either party, before it stands regularly for hearing, and causes should ordinarily be tried in the order in which they are entered on the trial docket. But the court has power and discretion to take up a case out of the regular order, for good cause, providing the parties are not prejudiced thereby, and a cause may properly thus be taken up to prevent a continuance by reason of anticipated absence of leading counsel. After a cause is once regularly set for hearing, it may be reset without regard to priority, and upon a day upon which a cause has been properly set for trial, or thereafter, and the court may pass over intervening cases and try the case. Where the statute requires cases to be called in their order, the court thus calling them may set cases ready for trial on a day thereafter. A statute providing that the court may for good and sufficient reason order a cause heard out of the regular order confers on the court a wide discretion, and what is a good and sufficient reason is for the trial court to determine, which determination will not be reviewed unless the trial court has grossly abused its discretion."

The only question then is whether or not there was an abuse of judicial discretion. This record clearly shows that there was not. This matter had been on the calendar for the December term at Moorehead, Minnesota, as well as in Bismarck, North Dakota. Trial there had been adjourned by order dated December 5th until the 13th of January, 1930, so that Mr. Hellstrom had ample time to know that his case would be reached for trial either on the 13th of January in Moorhead or prior thereto in Bismarck. Mr. Langer's notice of motion was served on

the 17th of December. The motion was argued on the 21st of December, and the court then took the matter under advisement, asking Mr. Langer to file an additional affidavit. The defendant then had every reason to anticipate that the case might be advanced upon the calendar, not later than the 6th of January, 1930. It is to be borne in mind that there was no affidavit before Judge McFarland showing how the defendant would be in any manner inconvenienced by the trial of the cause on any date he might set to subserve the convenience of the plaintiff and his witnesses. It is readily inferable from affidavits later supplied by the defendant that she was ready for the trial of the action in Minnesota as early as December 4, 1929, and the order of the judge of the district court of Clay County shows that postponement there was obtained by the plaintiff upon the payment of terms to the defendant. Other affidavits show that at the time of beginning the action in Minnesota the plaintiff had reason to believe that the defendant was a resident of that state; that later the defendant, in order to quash service of summons by publication in an action begun in North Dakota, made a showing by affidavit that she was at all times a resident of Bismarck, North Dakota; that on this showing an order was obtained quashing the service and another order obtained removing the action for trial to Burleigh county, the residence of the defendant. It thus appears in the record that both the plaintiff and the defendant are residents of North Dakota; that the services for which the action was brought were rendered in North Dakota; and that practically all the material witnesses lived in this state. Though it be entirely appropriate in the circumstances shown in this record for the instant action to be tried here, there is no basis whatever for any assumption that all the defendant was asking was a brief delay for convenience. On the contrary, the only deduction that can reasonably be drawn is that the defendant desired to force a trial in another state. In any event, there is no showing on behalf of the defendant that she was in any way prejudiced by thus advancing the case upon the calendar.

This brings us to the question of her application for a continuance. Her motion for a continuance based upon the absence of material witnesses was entirely inadequate under our practice. Continental Supply Co. v. Syndicate Trust Co. 52 N. D. 209, 202 N. W. 404. The only witness that the defendant claimed to be material was her sister, Minnie

Ostrander, living in Los Angeles, California. The moving affidavits as to what her testimony would be, or in what way it would be material at the trial, were very indefinite. There was no showing that any attempt had been made to procure her testimony in advance, or that there was no other witness available by which the thing sought to be proved by her could have been proved. And there was no showing on behalf of the defendant that she was not as ready and as well prepared for trial on January 3rd as she would have been at any other date if a short continuance had been granted. There is not even a showing that the witness could not have been present in ample time to testify.

It has been suggested that the showing made for continuance is as definite and sufficient as are the affidavits for the advancement of the case on the calendar. This is not a game of matching affidavits. Different principles apply in moving the discretion of the court in the arrangement of his calendar and in invoking a discretion to continue a case. Entirely different objects are sought to be attained and different rules are necessarily applicable. Concerning the discretion of the judge of the district court in setting a case for trial this court has said (Stockwell v. Crawford, 21 N. D. 261, 266, 130 N. W. 225, 228): "We know of no matter on which there is so wide an opportunity for the exercise of discretion pertaining to litigation as in the setting and arrangement of causes for trial by the district court, and in view of the immeasurably superior opportunities for intelligent judgment in such matters possessed by the district judge, it must in effect be left practically to his sense of the needs, relations, and necessities of the parties and the public."

Concerning defendant's motion to abate the action, the motion was made upon the theory that a similar action, upon the same pleadings and involving the same state of facts, was pending in the district court of Clay County, Minnesota. The defendant could not raise the question of abatement at this stage of the proceedings, and in this manner. Comp. Laws 1913, § 7447. This court, in Henry v. Maher, 6 N. D. 413 (on page 416 of the opinion) 71 N. W. 127, says: "The only way to raise this point is by an answer in the nature of a plea in abatement, if it does not appear upon the face of the complaint, or by demurrer if it does. If the point is not in this manner brought to the attention of the court, its judgment will be as valid as though no other action

had then been pending. The defendant can never urge in the second case that the pendency of the former action is fatal to the jurisdiction of the court in which the second suit is pending, over the subject-matter."

If it be assumed, however, that the motion to abate was properly made, we feel that under the authorities the ruling of the court denying the motion was proper, for the reason that the other action was pending in a foreign jurisdiction. We find the rule set forth in 1 C. J. page 84: "Although there has been some difference of opinion on the question, it is now well settled that in the application of this doctrine the courts of the several states are to be regarded as foreign to each other, so that the pendency of an action in personam in one state, is not, as a rule, either at law or in equity, pleadable in abatement of an action subsequently commenced in another state between the same parties on the same cause, even though the court of the state in which the prior suit is pending has complete jurisdiction. A recovery in one may be pleaded to the further continuance of the other, but until that is obtained, or unless the court in its discretion grants a continuance by reason of the pendency of the first action, each may proceed to judgment and execution, when a satisfaction of either will require a discharge of both. But while the pendency of a prior suit in another state is not pleadable in abatement as a matter of right, the court may in its discretion stay or suspend the second suit to await the decision in the prior one.

"The rule that the pendency of an action in another state is not ground for abatement is not affected by the provisions of the codes that the pendency of another action between the same parties for the same cause may be made a ground for demurrer or set up as a defense in the answer, but such provisions are construed as applying only to suits pending in the same state."

We will now consider the defendant's claim that the court erred in not sustaining defendant's objection to the introduction of any evidence under the complaint because of the failure of the plaintiff to furnish a bill of particulars upon demand. The claim of the defendant is that under § 7457, Laws of 1913, the defendant having demanded before trial a bill of particulars as to the items of the plaintiff's account, it was incumbent upon the plaintiff within ten days after such demand to

furnish a copy of the account, and having failed to do so the plaintiff was precluded from giving evidence thereof.

There is a distinction between a demand for the items of an account and a demand for a bill of particulars. Necessarily a bill for professional services rendered by an attorney would not contain the details of a commercial account. The word "Account" is used in rather a restricted sense, to items of work and labor, of goods sold and delivered. Jones v. Northern Trust Co. 67 Minn. 410, 69 N. W. 1108. And services rendered by an attorney covering litigation, appeals, preparation of pleadings and briefs, cannot always be itemized as separate charges, but may all be contained in one cover charge, as in this case of $10,000. It is the services rendered, the time occupied, the nature of the particular litigation involved, upon which the defendant may desire more detailed information. Hence, it is more in the nature of a bill of particulars than a statement of an account. And this court has held that a party is not bound to furnish the bill of particulars provided for by section 7457 on a mere demand, and that before a delivery thereof can be compelled or penalties inflicted for failure to do so, the court or judge must order that the bill of particulars be furnished. See Hanson v. Lindstrom, 15 N. D. 584, 108 N. W. 798; Baird v. National Surety Co. 54 N. D. 91, 98, 209 N. W. 204; also 49 C. J. 633, under footnote 67b. From these authorities it is clear that the lower court was correct in overruling defendant's motion.

We have examined carefully the many assignments of error which the defendant claims were made in the admission and rejection of testimony, in certain questions asked by the court and in questions asked by counsel for the plaintiff. It would be superfluous and useless to set forth all of these objections here. We are satisfied that there is not sufficient merit in them to warrant the court in taking the space or the time to comment upon them. There are only two points which the court deems of sufficient importance to comment upon specially. The first of these is the error which the defendant claims was committed by the lower court in the reception of the testimony of expert witnesses as to the reasonable value of the plaintiff's services. Defendant complains that their opinion was not given upon hypothetical questions, but that each witness was asked to base his opinion upon the reasonable value of such services from the testimony as given by the plaintiff him-

self. The defendant is correct in stating that it is the better practice to so frame the question that the expert has only to assume the truth of the facts therein stated. When he is called upon to form an opinion upon testimony which he has heard or read, there is danger that the witness in arriving at a conclusion will unconsciously pass upon the weight or credibility of the evidence. In determining the facts proved he will in effect usurp the province of the jury, and questions calling upon the witness to form an opinion based on the evidence which he has heard have often been rejected. But there is a strong line of decisions holding that where the testimony of a witness, or even of several witnesses, is not voluminous, and where there is no particular conflict, the expert may give an opinion based on the assumption that such evidence is true, and where there is no conflict as to the material facts the question need not be in hypothetical form. The witness is allowed to give an opinion from the evidence in such case upon the ground that by the terms of the question he is required to assume that the facts given in testimony are true and he is not required to draw any other conclusions or inferences as to the facts. See Jones, Ev. 3d ed. § 374.

This court in Walters v. Rock, 18 N. D. 45 (on page 54 of the opinion) 115 N. W. 511, uses this significant language: "This question was also objected to when asked the same witness: 'You read the testimony of Dr. Rea, and you heard the testimony of Dr. Rogers read, you heard the testimony of Mr. Rock in regard to the condition of his lip. Now, from the testimony of Dr. Rea, Dr. Rogers and Mr. Rock, state whether or not in your opinion Mr. Rock was suffering from a cancerous growth on his upper lip at the time he was treated by Dr. Rea in May, 1904.' The objection to this question was that it called upon the witness to pass upon the credibility of the witness in case of conflict. On examination of the evidence given by these witnesses, we find no conflict as to the facts stated by them. The conclusion or opinion of Dr. Rea as to what defendant was suffering from differed from that of the other medical witnesses, but as to the facts and conditions of the ailment there was no difference. For this reason, the evidence was not objectionable, and did not call upon the witness to decide facts properly for the jury. The form of the question is not to be commended. It is the safer practice to incorporate all the facts relied on in a hypothetical question."

Applying the reasoning then to the case at bar, we are satisfied that it was not error to ask the witnesses whether they had heard the testimony of Mr. Burdick, and whether upon such testimony they were able to base an opinion as to the reasonable value of the services rendered. There was no conflict between the parties as to the services actually rendered. The only conflict was what such services were worth, if anything, or whether better services might have been rendered.

The defendant also takes exception to the question asked some of the expert witnesses as to what in their opinion the reasonable value of such services were to Mrs. Mann. It is true that this is not the proper form of question to put to an expert witness, but on the record in this case it was without any prejudice to the rights of the defendant. There can be no doubt the purport of the questions were plainly understood by the court and jury. There could be no misapprehension as to what was meant, and there is a large amount of expert testimony as to the reasonable value of the services in which the question was not put in that precise manner.

The defendant further contends that it was error for the court to refuse to permit her to prove the value of the $165,000 worth of bonds which she received in the settlement of her divorce case. Her claim is that these bonds were not readily salable on the market for cash, and were only worth some $25,000 or $30,000. Our reply to this is that there is nothing in the record to show that there was any competent evidence offered by the defendant as to the value of these bonds. It is true that she was asked on her direct examination to relate certain conversations that she had with certain people in Minneapolis, but this surely would be hearsay and would not be competent upon which to base value. The cash market value of the bonds was not particularly in issue. There was no question but what the bonds were amply secured. There had been no default in the payment of any of the bonds due, and no claim that there would be any default. So the mere fact that the defendant might not be able to take the bonds to some trust company or bond house in the Twin Cities and turn them into cash at their face value would not be very material in deciding either the rights of the plaintiff or the defendant in this action.

We now reach the question as to whether or not there was error in the instructions of the court to the jury. We have examined these

critically, and while they might have been amplified and made somewhat clearer for the benefit of the jury, still we are satisfied that on the whole they state the law of the case correctly, and were sufficiently clear to enable the jury to know just what issues they were to pass upon. They sufficiently guarded every substantial right of the defendant, and the jury could not have been in any way misled by them.

The only remaining question then is as to whether or not there is sufficient evidence in the record to sustain the verdict, and whether the verdict is excessive. This court has repeatedly held that a verdict of a jury will not be disturbed where the evidence, if conflicting, warrants the interpretation placed upon it by the jury, and will not set aside a verdict of a jury unless it is clear that the verdict was arrived at through passion or prejudice or mistake.

The evidence here discloses that the plaintiff was defendant's chief counsel. His testimony is that he made some eight trips from Fargo to Bismarck upon her different legal matters; that he secured a modification of the original injunctional order; aided in the preparation of the pleadings; spent some sixty days all told in the work of preparing for trial, preparing briefs, appealing to the supreme court, and in the matters relating to her bonds; that he passed upon the form of the bonds, was largely instrumental in bringing the action to test their validity, prepared the brief upon appeal to the supreme court in that action; and claims that he secured for the defendant a very valuable settlement in her divorce action, and that the amount involved therein, namely, $165,000, which with interest covering a period of 23 years totaled $278,000, taken in connection with the other services rendered by him, was amply sufficient to warrant his fee of $10,000. It is evident that the jury looked at the matter from the plaintiff's point of view. The defendant did not deny any of the services, nor the time which plaintiff gave to her various matters. Her only claim was that the plaintiff should have secured more than $165,000 for her at the time of the settlement; that she was in fact the owner of the Bismarck Tribune at that time, because she held a stock certificate for 248 shares, therefore that the plaintiff should have procured the Bismarck Tribune Company plant for her and allowed her to pay alimony to her husband.

We see nothing in the evidence that would warrant the conclusion that the jury were swayed by passion, or prejudice, or sympathy. If

they believed the plaintiff and his witnesses, the testimony was sufficient upon which to base their verdict. The estimate of the value placed upon the plaintiff's services by the experts who testified varied from $8,000 to $20,000. So that there was a wide discretion given to the jury, and we feel that their verdict of $9,000 under all the circumstances was not unreasonable or excessive.

For all of the reasons herein stated the judgment is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE and BIRDZELL, JJ., concur.

BURKE, J., being disqualified, did not participate; Geo. M. McKenna, Judge of the Third Judicial District, sitting in his stead.

BURR, J. (dissenting). Plaintiff brought action in Clay county, Minnesota, to recover fees for his services to the defendant in the case of Mann v. Mann which reached this court. See 57 N. D. 550, 223 N. W. 186. While that action was pending he commenced this action. in the district court of Burleigh county, North Dakota, for these same fees. He moved for a continuance of the Minnesota case and this was granted over the objection of the defendant, the hearing being set for January 13, 1930.

The Burleigh county case was No. 53 of the civil calendar for December, 1929. This term convened December 9th, and but one case had been tried by December 21, 1929.

On December 17, 1929, plaintiff moved the court to set this case for trial some time between December 26, 1929, and January 6, 1930. This motion was based on affidavits from Judge Buttz, and William Langer, counsel for the plaintiff. In his affidavit Judge Buttz said he was "entirely familiar and intimately acquainted and cognizant of the facts developed in the said case of Mann v. Mann in all its phases up to the time of the trial in the supreme court of North Dakota," and that he had been advised by the plaintiff that he "is a material witness in the above entitled case." He said that he was to preside at a term of the district court of Pembina county commencing on the 7th of January and therefore it would not be possible for him to be present as a witness in this case during the term in session, and further, it would be possible for him to come as a witness at any time between December

27, 1929, and January 6, 1930. Nothing is said by anyone as to what his testimony would be, whether such testimony could be furnished by other witnesses, nor why his deposition could not be taken. Mr. Langer, in his affidavit, stated "he had been advised by a number of attorneys who are material witnesses—that they will be unable to be present and testify at the trial of the above entitled action after the 7th day of January 1930." He does not tell who these attorneys are, what they will testify to, whether their testimony could be furnished by other witnesses, or even where they reside. To his affidavit he attaches a letter from John F. Sullivan, who, he says, is "a material witness of the plaintiff in the above entitled action and the plaintiff herein cannot safely go to trial without him in attendance to testify at the trial of the above entitled action." In this letter Mr. Sullivan says that he expects to "leave Mandan and Bismarck on January 3, if matters run as I expect. I will be back to Mandan at noon on January 10th and will leave that evening for Hettinger, etc." He then gives his proposed itinerary from there and suggests "that you get your case on for trial so that my testimony would be had before the first of January."

The record is silent as to whether the court knew of the pendency of this motion, until December 21, 1929—the time when it was presented to him. However on December 20, the district judge excused all the jurors, except those serving in the case on trial, until January 7, 1930, and on December 21, 1929 he dismissed the remainder, taking a recess until that date "subject to such business as may be legally brought before it." Whether this latter action was before argument on the motion or after does not appear.

The record is silent as to what took place before the court at the time the motion was argued; but the court granted Mr. Langer, counsel for the plaintiff, permission to file an additional affidavit embodying certain statements which apparently he had made before the court and which are not set forth in the record.

On December 26, 1929, Mr. Langer presented to the court his additional affidavit—stated to be made by permission of the court granted at the time of the argument—and therein says specifically that "he has communicated with C. W. Buttz and the said Judge C. W. Buttz who was the judge that presided in the action of Mann v. Mann, has promised to attend and testify if the case comes on for trial *on the 9th or 10th of*

January, 1930." He also states in this affidavit, he consulted with the other lawyers who know about the material facts in the case mentioned, including Mr. Sullivan, and all of them agree to be present "particularly John F. Sullivan, who has stated he has arranged to have his cases at Bowman come on at a later date in order to accommodate counsel in the instant case and that he will be here on the 9th and 10th of January, 1930." It will be noted this second affidavit from Mr. Langer differs materially from his first affidavit, so far as the time at which Judge Buttz and Mr. Sullivan could be present is concerned.

This affidavit was not served upon the defendant, and we have a right to assume, therefore, plaintiff did not consider it necessary to serve the same because it embodied merely the statements which his counsel had made before the court at the time of the argument and therefore that counsel for the defendant would know its general contents. If this be so then the defendant was justified in believing plaintiff was not wanting to have the case heard until the 9th or 10th of January, and as all the defendant was opposing was the calling of the case prior to January 7th, the defendant would be satisfied. If this affidavit contained matter which was entirely new then it should have been served, and the trial court knew it was not served upon the defendant.

After this affidavit was filed the court—ignoring completely the statements in the affidavit made by plaintiff's counsel himself, that Judge Buttz, Mr. Sullivan and all the other witnesses for the plaintiff could be present to testify on the 9th or 10th of January, ignoring entirely the fact that he had already on the very day the matter was argued before him in Bismarck recessed the court until the 7th of January, ignoring the fact that this affidavit was not served upon the defendant or her counsel—made an order reconvening the term of court, reassembling the jury, and setting this case for trial on Friday the 3rd day of January, 1930.

We must remember this application to the judicial discretion of the Court is made by a party. It did not originate with the court. The court, when the matter was finally submitted, had already arranged the calendar, and recessed until January 7. The court was being asked to set case No. 53 ahead of all other cases. It certainly was incumbent

on the plaintiff to make some showing. Even the court has no right to keep juggling with the calendar, arbitrarily.

This order of advancement is dated December 28, 1929, being a Saturday. The record shows no attempt made to serve this order upon the defendant, or to give her notice of the reassembling of the court, until the 31st day of December 1929. She knew the recess had been taken to the 7th of January and, if this second affidavit for the plaintiff contained the statement made by his counsel on the argument before the court, she knew the witnesses which plaintiff deemed to be so important to his case, agreed to be present on the 9th or 10th of January.

The method of service of this notice is extremely peculiar. The order was made in Jamestown, North Dakota, on December 28th, setting the case for trial January 3, 1930 at 10 o'clock A. M.; nevertheless the only method of service adopted was to send a copy of the order under special delivery, directed to the counsel for the defendant at Bismarck, which special delivery letter was mailed on the train, December 31 (three days after it was dated), and was served by slipping it under the door of the office of the counsel for the defendant,—presumably in the hope and expectation he would be in his office that afternoon. The letter did not reach Bismarck until the afternoon of the 31st of December, and was discovered by defendant's counsel that evening. Thus defendant had but two full days to get ready, and one of these was a public holiday—New Year's Day.

The Judge who made this order was not present on the third of January and at his request Judge Grimson presided. At the time set the defendant opposed the advancing of the case to a date prior to the time set for the return of the jury on the ground that a witness for the defendant, her sister Minnie Ostrander, was a resident of Los Angeles, California, that she was an important witness, that the defendant could not go to trial safely without her testimony, and it would be impossible to take her testimony or secure her appearance in court to testify by the third day of January, A. D. 1930. It is true the affidavit in reference to the testimony of Minnie Ostrander is not as definite as it should have been, but we must remember the parties, in the argument for advancement or otherwise, were addressing themselves to a court fairly familiar with the situation and the general nature of the case, and there-

fore the counsel was not as specific as he would have been had he been addressing himself to a judge who was totally ignorant of the case.

Judge Grimson denied the motion and immediately an affidavit for change of Judges was filed. Judge Lowe was appointed to preside and though his residence is in Minot where his chambers are, he was able, fortunately, to be present immediatley for the trial of the case. The defendant made a motion to vacate and set aside the order advancing the case for trial. This motion is dated the 3rd of January, 1930 and sets up the situation with reference to Minnie Ostrander and further shows that Minnie Ostrander if present would testify "as to all the details of the proceedings had and held in Court, during the year of 1926, and the year of 1927, in the case of George D. Mann, Plaintiff v. Beatrice Mann, Defendant, in which case the Plaintiff herein seeks to recover a Judgment for $10,000 for his services as Attorney, and further, that she was a stockholder in the Bismarck Tribune Company, a corporation, prior to the re-organization of the Tribune Company, a corporation. That she will testify as to the service rendered by the Plaintiff to the Defendant, that she, the said Minnie Ostrander, knows and will testify to the Ownership of the Capital Stock, the physical value of the Bismarck Tribune business for the years next preceding the commencement of the suit of George D. Mann, Plaintiff against this Defendant. That her testimony is vitally important to the case of the Defendant herein, that she cannot safely go to Trial without her testimony—and that it will be impossible to secure her testimony by taking a Deposition or by securing her presence to testify."

Apparently this motion was heard by Judge Lowe on the 4th of January. It was promptly overruled and the case ordered to proceed to trial. At the drawing of the jury defendant renewed objections and added a multitude of reasons which we need not set forth—many of them having no real bearing on the case.

As stated in the majority opinion the defendant claimed the order setting the case for trial on January 3rd had taken her by surprise and she could not safely proceed to trial before the 7th of January.

As shown in the majority opinion the defendant appealed to this court and the opinion of this court, recorded 59 N. D. 611 et seq., shows the matter attempted to be litigated at that time. We held these orders

were not appealable, but could be reviewed on an appeal from the judgment in the case in which these orders were made.

The defendant in this case, Minnie Ostrander her sister, and George Mann were all of the stockholders in the Tribune Company. The value of the property belonging to the Tribune Company, the interest of this defendant in that company, how much George Mann should pay to the defendant herein because of her interest in that company were all matters of extreme importance in the case of Mann v. Mann, being the case in which the plaintiff herein represented the defendant. In this case at bar plaintiff is suing for his fees and the defendant is claiming his services were of such a character that she lost heavily in the settlement, —in other words that he was negligent in the handling of the former case. All she was asking was to have the only stockholder in the case, other than herself and her former husband, present to testify as to the work done by the plaintiff for the defendant and as to the value of the property. It is claimed there is nothing to show that Minnie Ostrander knew anything about this; but defendant did set forth in a very general way the nature of her testimony. It is useless to say no attempt was made to take her testimony by deposition. No attempt was made to take the deposition of Judge Buttz or of these other witnesses for the plaintiff.

The affidavit of counsel for the defendant, opposing the advancement, does outline generally what Minnie Ostrander would testify to. If this be not specific enough what about the affidavits furnished by the plaintiff for advancement? These do not state even generally what the desired witnesses would testify to. Counsel for the defendant made some attempt to comply with the rules regarding such affidavits, but there was not even the pretense of showing what testimony the desired witnesses for the plaintiff would give.

These witnesses for the plaintiff all lived in North Dakota. There were twenty-two attorneys mentioned by Mr. Langer, the counsel for the plaintiff, in his affidavit of December 26—the second affidavit—thirteen of them residing in Bismarck and nine in Mandan, only six miles away. Judge Buttz was residing in Devils Lake, just a few hours' ride from Bismarck.

To accommodate the plaintiff and these witnesses the court, after having recessed, ordered a reconvening of the term, the reassembling

of the jury and the advancement of the case for four days—giving the defendant three days' notice by having a letter slipped in under the door of her counsel's office—whereas the only witness she had, in addition to herself, to show the value of this property and her own interest therein was her sister who lived in Los Angeles some three or four days' distance. It is all right to say the defendant should have had her sister there waiting all of this time. The plaintiff should have had his witnesses there waiting all of this time.

A great cry was made in the district court that the case had to be heard before the third of January because of Judge Buttz and Mr. Sullivan; but the strange feature of the case is that Judge Buttz, about whose duties so much has been said, and who in his affidavit said he could not be there unless the case was tried before the seventh, was at the trial of the case on January 7, was not called to testify until 5 : 45 P. M. that day, and continued his testimony until about 8 P. M. of that day. These facts appear on the record of this case in the office of the clerk of the district court, though they do not appear on the record in this court. I had the clerk of the court give me the facts. In addition John Sullivan was not even called as a witness, though his home is in Mandan six miles away, and there is nothing in the record showing he was out of reach of the court.

It may be said Minnie Ostrander could have been there by that time; but we must remember the defendant knew the court had been recessed until the seventh of January, and that her case was No. 53 on the calendar of a court which was to re-convene on January 7. She was given three days—one of which was a holiday—to get her sister here. She knew it was useless to try. By the time she got word to her, and she reached here it would be too late. According to the usual custom, of which we may take judicial notice, cases of such importance as this one are generally set for a date certain, with reasonable time in advance given so that parties may have their witnesses present. It is true that defendant had no right to insist on this method; but she had a right to believe her case would be treated the same as any other case. Why all this sudden hurry? Was it to try the case here before the Minnesota case was called? Three times plaintiff sued the defendant for these fees—once in Minnesota, once in Cass county, which case was dismissed, and then this case in Burleigh county.

Motions for advancement, continuances, etc., are "not a game of matching affidavits;" but a lawsuit is the method prescribed by civilized people to ascertain the truth of a controversy, and the very essence of the method is that each party be given a fair and full opportunity to present his case. It is not a game of wits between attorneys, nor a game of skill like chess. Counsel for the defendant may not have had a very clear conception of the technical rules, the procedure, and what was necessary to protect his client's interests, but he certainly presented to the three different district judges enough to show each of them that a case of such extreme importance to both sides was being "jockeyed"—by one or both sides if you please. He showed that the action of the court in setting the case for trial on January 3, 1930 was against the wishes of both sides—for we must not forget the plaintiff himself wanted the case tried on the 9th or 10th of January as shown by the second affidavit of Mr. Langer—and was an arbitrary proceeding. When in addition to this the method of service of notice is considered and we consider that all defendant was asking for was that the case be deferred until the 7th of January, one cannot help but wonder whether it had not been temporarily forgotten that the defendant's rights should be considered, even though she may not have technically complied with precedents. We must not overlook the fact that even this "notice," which was served by slipping under the door of her counsel's office, was not a notice to him nor to the defendant. It was merely a purported copy of the order to the Clerk reassembling the jury and reconvening the term. Outside of the address upon the envelope—Hon. F. O. Hellstrom, Attorney at law, Bismarck, N. Dak.—there was nothing to indicate any notice to either Mr. Hellstrom or the defendant. There was no word or syllable therein from the Judge on any matter whatever; nothing to show from whom it came, except that the envelope had the return card of the judge upon it. It was left to Mr. Hellstrom to guess that the judge had sent him a copy of the notice under special delivery, for there was a "special delivery notice" accompanying the envelope with an (X) mark placed before this legend "Has been placed under your door," referring to a special delivery letter. Apparently the order dated December 28th had been filed with the clerk, the copy marked and filed; and in some manner the Judge received the copy, for the copy received by Mr. Hellstrom had the notation: "Filed in the office

of clerk of district court, Burleigh county, North Dakota, December 31, 1929." However, there was nothing to indicate when the order was sent to the clerk.

The majority opinion says "the only question then is whether or not there was an abuse of judicial discretion." That is the situation. The majority opinion says "This record clearly shows there was not." The opinion then goes on to show that the defendant had "every reason to anticipate that the case might be advanced upon the calendar, not later than the 6th of January, 1930." I believe the record shows the defendant had every reason to anticipate that the case would not be called for trial before the 9th or 10th of January; for this was the date asked for by the plaintiff who was urging advancement.

Of course the court has control of the calendar; but there must be some certainty and assurance given to litigants. The calendar is not the private possession of the judge, nor should he change his mind over night without reason. It is true the court has the power to alter the arrangement of cases, without application, when the interests of justice require the change; but such change is not to be made ruthlessly and without fairness to both sides.

To my mind the case presents such a gross abuse of discretion on the part of the trial court, contributed so much to the disorganization of defendant's case that any failure on the part of counsel for the defendant to outline properly and specifically the technical matters generally necessary should be overlooked. We have no right to assume Minnie Ostrander knew nothing worth while about the case, or that her testimony would have no effect. If this action be the "sound judicial discretion" mentioned in the syllabus of this case, it is difficult to understand what is necessary to show "unsound" action. The record in this case shows that prior to the trial the plaintiff offered to take $4,000 for his services and yet the jury gave him $9,000. I am not saying the verdict is not fair, nor am I considering it. I say it should not be considered nor the trial considered.

A right result must be reached in a right way. Confidence in fairness to both sides must reign or the justice we render is open to suspicion. No litigant has a right to needlessly delay the court; but far better a three days' delay than foster a situation where a litigant feels his rights are treated cavalierly, and dealt with impatiently. It is not

a sufficient answer to say there is nothing to show the result would have been different. The situation must be determined as of the date when this controversy arose and under the facts known at that time. After a review of this situation I feel I must dissent.