## LYBRAND v. MILLER–LYBRAND CO., Inc.

### No. 4384.

Court of Civil Appeals of Texas. Amarillo.

Oct. 15, 1934.

Cooper & Lumpkin and Clayton & Bralley, all of Amarillo, for appellant.

W. M. Lewright and Willis, Studer & Studer, all of Pampa, for appellee.

MARTIN, Justice.

On the 8th day of June, 1934, the district court of Gray county, upon petition of Miller-Lybrand Company, a private corporation, issued a temporary injunction against the respondent J. M. Lybrand, Jr. Upon a hearing on motion to dissolve, the court overruled and refused same, from which respondent, appellant here, appealed to this court.

Relator, the appellee here, had been operating and conducting an automobile sales business, repair shop, etc., in the town of Pampa at the last-mentioned date and some two or three years prior thereto. It was incorporated with 15,000 shares of capital stock of the par value of $1 each. 3,500 shares of this was owned by appellant, J. M. Lybrand, Jr. One share was owned by the wife of L. R. Miller, one by his father-in-law, Henry Schafer, and all the remainder, 11,498 shares, by said L. R. Miller.

On August 17, 1933, a contract was entered into, the material portions of which are as follows:

"This memorandum of agreement between L. R. Miller and Henry Schafer, principal owners of the Miller-Lybrand Company, Inc., on the one part, and J. M. Lybrand, Jr., as manager, on the other part, it is mutually agreed as follows:

"J. M. Lybrand, Jr., is to have the sole and exclusive management of the said Miller-Lybrand Co., Inc., L. R. Miller is to receive a total monthly income out of said business of $300.00. Henry Schafer is to receive $200.00 per month out of said business, which is to be applied on the bank indebtedness of said Miller-Lybrand Co. Inc., at the First National Bank, Pampa.

"At any time said Lybrand is able to raise and pay over to said Miller $2,800.00 and release Henry Schafer from further liability on the Miller-Lybrand notes at the First National Bank, Pampa, then and in that event, said business and assets of the Miller-Lybrand Company are to become the sole property of said Lybrand. Until such time as Lybrand takes over ownership of said business, Miller is to continue to receive an income of $300.00 per month and Schafer to continue to receive $200.00 per month for purpose above stated."

Under this Lybrand entered into possession of said property and conducted same until he was ousted from possession by the writ of injunction mentioned above.

Appellee, Miller-Lybrand Company, claimed that the contract as to it was void. It alleged, in part, in its petition for an injunction: "Plaintiff further respectfully shows unto the Court that at no time prior to or since the execution and delivery of said contract was the same ever ratified, adopted or approved by plaintiff herein, * * * and that said contract was at no time binding to or upon plaintiff herein * * *. Defendant herein has been and is mismanaging and wrongfully conducting the same in the particulars hereinafter set forth, to such an extent as that the business affairs of this plaintiff are now, at the time of the presentation of this petition, in a chaotic condition and in such condition as that its stockholders are and will suffer irreparable harm and injury."

These allegations were followed by a multitude of charges against Lybrand, the general nature of which will be illustrated by the following: That he so mismanaged the said business that its sales have been reduced to practically a nullity; that he became involved in personal altercations and troubles with the employees of said corporation and that he had no competent employees; that

the Ford Motor Company franchise had been canceled; that he had committed an act of bankruptcy in paying his wife an indebtedness in preference to other creditors out of the profits of the business; that he had openly boasted that he would so conduct the affairs and business of appellee as that he would appropriate to his own use and benefit all of its properties and assets; that he had wrongfully embezzled $2,500 of its property. The material portions of its prayer are that it should have judgment against the defendant for all sums of money "as such accounting may show defendant to be indebted to plaintiff herein," that it recover of and from the defendant all of its assets and property as may be in the possession of the defendant and have its writ of possession, and that the temporary injunction be made permanent.

The terms of the injunction are somewhat lengthy, but it, in susbtance and effect, enjoined Lybrand from in any manner interfering with the conduct or control of the business affairs of said corporation, or selling or disposing of any of its assets, or "from remaining in possession or control of any of the properties and assets of said corporation."

Appellant filed answer, and the evidence raised at least a sharp issue of fact as to the truth of the material allegations of appellee's petition.

■ We will treat this as a suit by Miller and Schafer against Lybrand, as obviously they are the beneficiaries of any judgment for the corporation; they being, with the exception of Lybrand, all the stockholders except Miller's wife, who owns one share and who is not complaining. We say this because the stockholders are but the alter ego of the corporation and its fictional existence cannot be made the excuse for bringing a suit or asserting a right which all the stockholders are estopped from asserting. We quote:

"A corporation has no such separate entity as will permit it to act counter to the unanimous desire of its stockholders. * * * By participation in the transaction the shareholders are estopped to deny its legality, and the corporate entity cannot act for them. Home Ins. Co. v. Barber, 67 Neb. 644, 93 N. W. 1024, 60 L. R. A. 927, 108 Am. St. Rep. 716." Pueblo Foundry & Machine Co. v. Lannon, 68 Colo. 131, 187 P. 1031, 1032.

"Granted that the body of the stockholders are in substance the corporation, it would follow that estoppels are concurrent between the stockholders and the corporation; that whatever will estop the stockholders will estop the corporation, and whatever will estop

the corporation will estop the stockholders." Thompson on Corporations, § 2095.

"As a general rule, whatever will estop the stockholders will estop the corporation, and whatever will estop the corporation will estop stockholders. See Thompson, Corp. § 5269; Omaha Hotel Co. v. Wade, 97 U. S. 13, 24 L. Ed. 917; Union Pac. R. Co. v. Chicago, R. I. & P. R. Co., 163 U. S. 564, 16 S. Ct. 1173, 41 L. Ed. 265." Mann v. Mann, 57 N. D. 550, 223 N. W. 186, 188.

See, also, Boston & Texas Corporation et al. v. Guarantee Life Ins. Co. (Tex. Civ. App.) 233 S. W. 1022, and authorities there cited; Phil H. Pierce Co. v. Rude et al. (Tex. Civ. App.) 291 S. W. 974; Aransas Pass Harbor Co. v. Manning et al., 94 Tex. 558, 63 S. W. 627; State National Bank v. Encinal Mercantile Co. (Tex. Civ. App.) 277 S. W. 398.

It is not alleged nor shown that Lybrand breached any express covenant of his contract with the other shareholders of the said corporation. Indeed, it affirmatively appears that he did comply with the provisions of payment to Miller and the bank therein mentioned and that each had been paid under said contract all amounts due as stipulated in the contract. His contract gave him the right of possession and management with the ultimate right of ownership, contingent upon a certain payment, the most of which had been paid when this suit was filed and all of which was paid according to contract. We are doubtful that the allegations of the petition are such as to entitle Miller and Schafer to a judgment for title and possession of said property.

■If we assume, however, that the appellee's suit is one that states a tenable cause of action for title and possession of the property, it is apparent that the aid of a court of equity has been invoked to transfer possession of property in advance of a hearing on the merits, from a claimant whose possession is not alleged, or even claimed, to have been obtained by force or fraud.

In the case of Simms v. Reisner (Tex. Civ. App.) 134 S. W. 278, the court held: "It is not the function of a preliminary injunction to transfer the possession of land from one person to another pending an adjudication of title, unless the possession has been forcibly or fraudulently obtained by defendant and the equities require that the possession thus wrongfully invaded be restored, and the original status preserved pending the decision of the issue of title."

See, also, Jeff Chaison Townsite Co. v. McFaddin, Weiss & Kyle Land Co., 56 Tex. Civ.

App. 611, 121 S. W. 716; San Jacinto Construction Co. et al. v. Scanlan et al. (Tex. Civ. App.) 300 S. W. 220; Simms v. Southern Pipe Line Co. (Tex. Civ. App.) 195 S. W. 283; Head v. Commissioners' Court of Hutchinson County et al. (Tex. Civ. App.) 14 S.W.(2d) 86.

If we treat the appellee's suit as one only for the possession of property or as one only for title to such, we are confronted with the rule that the "court is without authority to divest a party of property rights without a trial and any attempt to do so is void." Coffee v. Borger State Bank (Tex. Civ. App.) 38 S.W.(2d) 187, 189, and authorities there collated. In other words, the temporary injunction in this case gave to appellee, in so far as possession was concerned, all the relief it was entitled to in advance of a hearing on the merits. This, a court is ordinarily without authority to do. Gordon et al. v. Hawkins et al. (Tex. Civ. App.) 66 S.W.(2d) 432.

■ If such suit is one only for damages, there could obviously be no valid basis for the issuance of an injunction whose apparent purpose and evident effect was to transfer possession.

■ Finally, if the contract between the stockholders referred to above is to be construed as containing an implied covenant dedicating all the profits of the business to the payment of Miller and Schafer and the corporation's creditors, and the said suit is one for a breach of this covenant, the injunction issued is not one restraining acts in breach thereof, like embezzlement or misappropriation, but one which affects possession only, as already stated.

We have not been favored with formal briefs by either party and have had much difficulty ascertaining the precise nature and purpose of appellee's suit.

What has been said above indicates our views that the corporation is not entitled to bring a suit for either title or possession upon the naked ground that it has not ratified the contract entered into between the stockholders, and if we consider this case as one brought by the corporation for the benefit of the majority stockholders, as obviously it is, then it appears to be clearly one in which a temporary injunction has been issued to transfer possession from one to the other of these warring claimants in advance of a trial on the merits.

The judgment of the trial court is reversed, and the temporary injunction dissolved.

HALL, C. J., not sitting.