W. W. DEAN, Appellee, v. LOUIS KOOLISH et al., Appellants.

No. 40549.

JANUARY 13, 1931.

REHEARING DENIED APRIL 11, 1931.

Stason & Knoepfler, for appellee.

Sam G. Pickus and Parrish, Cohen, Guthrie, Watters & Halloran, for appellants.

EVANS, J.—The accident under consideration occurred at Sioux City on October 12, 1928. The defendants owned and operated a garage,—Koolish being the owner and Naughton an

employee in its operation. The plaintiff was a physician practicing in Sioux City. He kept his car in live storage at this garage and had done so for a couple of years. In the operation of the freight elevator in such garage, and while it was transporting plaintiff's car and while plaintiff was in such car, the plaintiff was severely injured. As a result he was confined in the hospital many months and will suffer permanent injury to a substantial degree. The garage in question fronted west and was usually entered from that direction. The freight elevator was at the east side of the garage and opened westward toward the entrance of the garage. The plaintiff's car was usually stored on the third floor and occupied a particular place. It was conveyed from the ground floor to the third floor in the freight elevator; and in like manner was conveyed from the third floor to the ground floor. This elevator was a slow-moving one and was operated by a cable upon which the operator pulled either up or down reversely to the direction he desired the elevator to take. This elevator moved and stopped automatically from the first floor to the third and likewise from the third floor to the first floor.

For the purpose of setting forth the material circumstances leading to the accident, we can do no better than to quote excerpts from the testimony of the plaintiff on the one hand and of the defendant-Naughton on the other hand.

The plaintiff testified in part as follows:

"I left my office at 5:30 in the afternoon of October 12, 1928, and went to the garage for the purpose of getting my car to go to the Lutheran Hospital. At the garage I saw Leo Naughton and two other parties when I went in standing at the south entrance of the garage. There was a gentleman and a lady, about a middle aged couple, probably thirty years old, and Mr. Naughton. They were the only persons I saw in the garage when I went in. I walked in in the usual way. I had not telephoned for my car and Mr. Naughton said to me: 'Doctor, our other man is out. I am alone here and these people are in a hurry. Would you mind going up after your car?' I told him that I thought I could. I started back to the elevator with Mr. Naughton. We went back to the elevator and stepped on the elevator and Mr. Naughton pulled the cable and we went to the third

floor. The elevator stopped at the third floor and we both went off together. The car he was taking down was nearer the elevator than mine. Mine stood back probably 35 feet from the elevator. His was fairly close. He got in his car first, drove it up to the elevator and pulled the cable and went down. In the meantime I started my car and drove it up within 16 feet of the open elevator shaft. I hesitated a minute and the elevator was being returned. I could hear it coming. It got up flush with the third floor and I started to drive on. My car was in low. I had never driven on an elevator before with my car. I was driving very slowly. As I was driving on the elevator the elevator started to descend. My car was practically on the elevator with the exception of the back wheels. I just felt a little chug, just like the back wheels had run over a street car rail or something. •I dropped on to the elevator. The elevator continued to go down. The front end of the car was going down but the back was remaining stationary. I attempted to get the rest of the way on but I did not succeed. I seemingly lost traction and the car refused to move. I threw out the clutch, put my foot on the brake and grabbed the steering wheel tightly. I threw out the clutch with my left foot and put the brake on with my right foot. The brakes were on the rear wheels. I then began to take a nose dive. The front descended and the back remained stationary. After the car assumed about in the neighborhood of 40 or 45 degree angle, it fell. The front end of the car was on the elevator and it was the back part of the car that dropped.''

The defendant Naughton testified in part as follows:

''I recall the accident on October 12, 1928. The doctor had not been there until the time of the accident on that day. The night preceding the accident the car was on the third floor in its customary place on the north side. The doctor came to the garage on October 12th late in the afternoon, possibly 5:00 or 5:30. There were two parties there; a lady with a small child and a gentleman. I did not have a conversation with the doctor at the time he came there. I just met a car and turned around and was receiving the check from the lady for her car. The lady was standing in the garage part of the building just about where the driveway comes into the garage, the usual place where they stand when they come after a car. This driveway takes up about

half of the building. The doctor asked me at that time—'I am in a hurry Leo, can you get my car down' and I said: 'Sorry, but there are two parties ahead of you doctor.' I then took the check from the lady for her car and she described it as a Ford coupe and I remembered it was on the third floor and I took the check and walked back to the elevator, and the doctor walked back with me. I got on the elevator and so did the doctor. I did not have any conversation with the doctor on the elevator; I did not talk to him. I think he remarked he was in a hurry or somthing like that. He might have talked. There was a gentleman there after a Buick and he walked to his car which was on the first floor. He had some bundles and he stood by his car there on the first floor on the south side. The cars sat close together and he couldn't get in it and stood in front of his car. And those are the owner of the check and of the Buick car I speak of. At the time I walked to the elevator with the doctor following me, I passed this man standing beside his Buick. This elevator stops itself on the third and first floors. That is if you start the elevator on the third floor and it descends to the first, it stops of its own accord, electrically. If you start the elevator on the first floor, unless you stop it, it goes directly to the third floor and stops. If you wanted to get off at the second floor, you would stop it with your hand as you ascended if you were going to the second floor. If you are coming down, you stop it as you come down to the second floor. For the purpose of delivering a car from the first to the third floor, you put the car on and pull the cable and that is true in either direction. As we got off the elevator on the third floor, the doctor's car was in its usual place on the north side, quite a ways back from the elevator and the car I was after, the Ford, was on the south side to my left standing closer to the elevator than the doctor's. I turned to get in the car I was after and the doctor walked toward his car and as I got in the car, why naturally as I was closest, I was the first car down and the doctor turned around and said, 'Hurry up and send the elevator back will you' and I drove my car to the first floor and delivered the Ford to the lady *I went back to the shaft and sent the elevator to the third floor*. I then turned around to take care of the gentleman with the Buick. He had some bundles, as I stated, and was standing in front of his car on the first floor and the cars were parked close together. So I took the bundles

from him and put them in the back side of his car and then I got in his car to start it and drove it out, and by that time the elevator had reached the third floor and at that instant I heard the doctor drive on the elevator. On the elevator between the third floor and the elevator there is a space in there and an employe of the garage becomes familiar with the sound. Two sets of wheels pass over that space on the elevator, the front wheels and rear wheels, and there is vibration to the elevator. The elevator shakes and rattles quite a bit when the cars drive on it. As a matter of fact when I am on the first floor and no one is in the building and no motors running, I can hear someone walk on the third floor very plainly. It is an old building and wood floors and sounds carry quite easily and the shaft there vibrates the sound. There was no one on the third floor besides the doctor at the time he got on the elevator. There was no help in the garage building besides myself at that time. I was alone. I heard the doctor get on, I started the Buick car—tried to start it. It was slow starting. It was an old car and the doctor was up on the third floor and was honking his horn, so I drove the Buick, got it started and drove it out of the stall into the driveway. You have to drive the car forward you know and get out a certain distance out to your left, and you are obliged to back it up and repeat the operation possibly two or three times, depending on the length of the car, and I got it out into the driveway. I had heard the doctor honk his horn possibly a half dozen times at that time. I delivered the Buick to the gentlemen and got out of it and ran back to the elevator shaft and looked up. I looked up and seen the doctor's car was on the elevator. I could hear the motor running. The noise of the motor running came from the east end of the elevator shaft where the motor would be. When I looked up in the shaft I did not see any part of the car projecting over onto the surface of the third floor. There is a space between the elevator platform and the surface of the third floor and if anything extended over there, you could see it very plainly. There was not a thing projecting over there at that time. I did not measure the distance between the elevator and the floor, but you can see clearly in that space. I looked up and saw the doctor's car was on the elevator and I hollered up to the doctor 'All right doctor.' There was nobody else that I know of in the building or the garage part of the building at that time.

I was standing up, the elevator would be in front of me, standing at the edge of the elevator, and at that time you could get around the side of it. The enclosure wasn't there and I had my hand on the control cable and looked up and hollered 'All right doctor.' The doctor honked his horn in answer to my holler 'All right doctor.' I then pulled the cable to lower the elevator. I did not leave the elevator just at that moment. I stood there in that position until the elevator came down possibly six feet below the third floor and I relaxed and looked around and there was a gentleman in the garage. He had apparently come out of the men's room and he came out walking slow. He was walking south and he come out slow like he possibly would have business in the garage and so I walked towards him, took a couple of steps, inquisitive like to see what he wanted, but as he came out, he came around the office part of the garage there and turned into the driveway towards the street. I was satisfied he didn't want anything and at that time I had walked up from the elevator and naturally he didn't want anything and I naturally walked back to the elevator, turned towards the elevator and started back. Just at that time I heard the crash. I was just about in the act of turning towards the elevator when I heard it. I don't know whether I was facing it, it all happened quick. I heard a kind of a crash. I had never heard that exact noise before on the elevator. The minute I heard it, or as soon as I heard it I *ran and stopped the elevator.* * * * After the doctor left I went back to the elevator with Mr. Wright and Mr. Glew. At that time the elevator was in the same position as where I had stopped it. It was four feet below the second floor.''

The foregoing presents the controlling facts in the case. With these before us we proceed to a consideration of the grounds of reversal urged by the appellants. The petition was prolific in its specifications of negligence and covered a rather broad and indefinite field. The same thing may be justly said of the affirmative allegations of the answer. The instructions of the court dealt in some degree with all these allegations and counter-allegations. Criticism is directed by the appellants to some of the instructions.

I. The defendants moved for a directed verdict on specified grounds, all of which are reducible to alleged lack of evidence

in support of the petition. Ground of reversal is predicated upon the refusal of the court to sustain the motion. The correctness of the ruling, in our judgment, is not debatable. We shall not therefore discuss it.

II. The principal complaint of the defendants is directed to Instructions 10, 11, and 12, given by the court.

Instruction 10 is as follows:

"Par. 10. Your attention will first be directed to the first ground of negligence alleged by the plaintiff, to wit: 'In starting the elevator down, without giving any warning thereof.' And you are instructed, that if the plaintiff has proven to you by a preponderance of the evidence, that the defendant Naughton, operating the elevator from the ground floor, sent the elevator to the third floor unaccompanied, and that the plaintiff in accordance with said Naughton's instructions and directions started to drive his automobile on to the elevator, but before the same was wholly and fully upon the elevator, said defendant Naughton, suddenly and in a careless and negligent manner operating the elevator from the first floor, caused it to rapidly descend; that the rear bumper of plaintiff's automobile caught and hung on the edge of the third floor level as the elevator descended, until the front part of said automobile had descended to such a distance that the bumper suddenly tore loose from the edge of the third floor, causing the automobile to suddenly drop to the elevator floor; and you further find by a preponderance of the evidence that the defendant Naughton was guilty of negligence in so doing, and that such negligence was the proximate cause of the injury complained of; and you further find that the plaintiff has proven to you by a preponderance of the evidence that no negligence on his part caused or contributed to the injury complained of, then you will find in favor of the plaintiff.

"(2) But if you do not so find, or if you find that the defendant Naughton at the time and place where the injury occurred was in the exercise of reasonable care and caution, and that no negligence on his part was the proximate cause of the injury, then you will find for the defendants.

"(3) Or, if you find that the automobile of the plaintiff was completely and wholly upon said elevator, and that upon a signal or request given by the plaintiff to the defendant Naugh-

ton, the defendant Naughton pulled the rope and lowered the elevator, and that said Naughton was free from negligence in so operating said elevator then you will find for the defendants as to this ground of negligence.''

For convenience of reference in our discussion to its different parts, we have numbered the same parenthetically. The complaint directed against the first part of the instruction is the interpretation put by the court upon a specification of negligence contained in the petition. This specification was incorporated by the court in the instruction in quotation marks. It is to be conceded that this specification was indefinite and somewhat uncertain in meaning. It might well have been assailed as a pleading. The court put an interpretation upon it that was consistent with the evidence on both sides and not necessarily inconsistent with the pleading itself. The negligence of the defendants, if any, was akin to a failure to warn. It was such in a qualified sense. The defendants owed *more* than a duty to warn the plaintiff before pulling the rope for a descent of the elevator. They owed him the duty of care either to wait for a signal from him or else to know that his car was fully within the bounds of the elevator. The instruction at this point recognized the scope of the duty of the defendants in this regard and was consistent therewith; and this answers the complaint that the instruction has no support in the evidence.

Complaint is also directed to the use of the words ''*rapidly* descend''. The use of the word ''rapidly'' in this connection was not well advised. It carries little if any meaning in the connection in which it is used. Rapidity, as a term, is comparative. Any specified rate of speed may be deemed as rapid or as slow, depending upon the attendant circumstances. Any rate of speed in the descent of an elevator under the circumstances depicted in this record, would be too rapid. Though the rate of speed was slow from one point of view, yet it was not slow enough to enable the plaintiff to escape the peril of the descent. This was the evident thought in the mind of the court in the use of the word. Moreover the actual rate of speed of this elevator is made to appear in the record by the undisputed evidence. The distance between the first and third floors was twenty-two feet. Such space was traversed by the elevator in forty seconds whether going up or down. Such rate of speed

was invariable and was not subject to increase or decrease at the will of the operator. In this state of the evidence it became quite immaterial whether such a rate of speed be characterized as "rapid" or "slow". The actual rate remained the same whatever the characterization. No prejudice could therefore arise at this point.

III. Criticism is directed to Instruction 11. This instruction is as follows:

"11. Your attention will next be directed to the second ground of negligence charged in the petition, to which your attention has been called in the first paragraph of this charge. And you are instructed that if the plaintiff has proven to you by a preponderance of the evidence that if said elevator at said time and place was started down, without the defendant Naughton or some other employee of the defendant Koolish accompanying the same, and operating said elevator directly from said elevator platform; and in operating and using said elevator without having an operator or attendant on the elevator to operate and use the rope lock on the operating cable to prevent the car being taken from any floor, and to prevent the operation of the car by persons on other floors than the one at which the car was stationed; and that ordinary care and diligence required that the operator should be upon the platform of the elevator to operate the same and to use the rope lock on the operating cable; and that the defendant Koolish or his employees failed so to do, and that the defendant Koolish or Naughton was guilty of negligence by reason thereof, and that such negligence, if any, was the proximate cause of the injury complained of, and that no negligence on the part of the plaintiff was the proximate cause of or contributed to produce such injuries, then as to this ground of negligence you will find for the plaintiff.

"(2) You will bear in mind, that it was the duty of the plaintiff to exercise reasonable care and caution to protect himself from injury, and if by any act on his part or omission to do any act on his part which a reasonably careful and prudent person would have done, or would have omitted to do under like circumstances, then he would be guilty of negligence, and if such negligence, if any, contributed to or was the proximate cause of the injury complained of, he cannot recover.

"(3) Or if you find, that the plaintiff and the defendant

Naughton, entered into an arrangement or agreement whereby the elevator in question should be sent to the third floor, without an operator on said elevator, then the plaintiff waived his right to have an operator on said elevator, and cannot predicate negligence by reason of the fact that there was no operator on said elevator at said time.''

The facts as described by the evidence in this record are somewhat out of the ordinary. In the foregoing instruction the court purported to predicate its hypothesis of fact upon the evidence. The appellant complains of the instruction. The complaints made are general rather than specific. We have no occasion to attempt an analysis of the instruction as a whole or to determine its abstract correctness as distinguished from the alleged errors complained of. The defendants filed their exceptions to instructions within the statutory time. Of such exceptions No. 6 to No. 13 inclusive are directed against this instruction. We confine our consideration to these exceptions. Exceptions No. 6, No. 8, No. 11 and No. 12 are all predicated upon the alleged ground that the certain hypotheses of the instruction have no support in the evidence. We have set forth above the substance of the evidence of the plaintiff on the one hand, and of the defendant Naughton on the other. It will readily be seen from the evidence thus appearing in this opinion that there was evidence in the record in support of every hypothesis contained in the instruction now complained of. Exceptions No. 7, No. 9, No. 10 and No. 13 are predicated upon the alleged ground that the instruction is contradictory; that it failed to charge the jury that if the plaintiff went upon the elevator and undertook to use it with knowledge that there was no attendant or operator present, he would be guilty of contributory negligence; that the instruction impliedly cast upon the defendant the burden of proof of contributory negligence. These exceptions are directed more particularly to the last paragraph of the instruction, which we have numbered parenthetically No. 3.

It will be noted that this part of the instruction purports to qualify all that has gone before. It is not contradictory in any other sense. The qualification was in the defendant's favor and was in accord with the defendant's requested instruction No. 5. The defendant's contention in exception No. 9 that the

plaintiff was guilty of negligence if he went upon the elevator and attempted to use the same with knowledge that there was no operator thereon, is not tenable. Such an act on the part of the plaintiff might or might not constitute negligence, and the issue was so submitted.

The contention that the burden of proof of contributory negligence was impliedly laid upon the defendant, is directed to that part of the instruction which uses the expression "or if you find". In instruction 5 the court expressly laid upon the plaintiff the burden of proof of freedom from contributory negligence. There was therefore no room left for a mere implication to the contrary. It is of course legally possible that the plaintiff may fail to prove freedom from contributory negligence and that in such a case the jury might find that contributory negligence was affirmatively proved against him. There is no inconsistency between the two facts. Indeed it is usually true that where the plaintiff fails to prove freedom from negligence, the record does disclose contributory negligence affirmatively. There is therefore no necessary prejudice to a defendant in the use of the words, "if you find" provided that the court does instruct appropriately that the burden is upon the plaintiff to prove his freedom from negligence. In this case the defendant presented requested instructions on the subject of contributory negligence. These were numbers 3, 4, and 5. Each one of them *impliedly* assumed the burden of proving contributory negligence to be on the defendant. In each of them the introductory sentence was "you are instructed that if you find from the evidence that the plaintiff, etc.". If the use of this form of expression were to be deemed otherwise erroneous, the error herein would have been clearly invited by the requested instructions of the defendants themselves.

Complaint is made of what is termed the "involved and complicated" form of the instruction. It is involved and complicated however only in the sense that the facts appearing in evidence might be thus characterized. We deem it clear that none of the exceptions to this instruction filed in the court below are tenable, and we have no occasion to pursue further analysis of the instruction.

IV. The appellants complain also of instruction No. 12 in that it laid an undue burden of proof on the defendants.

This complaint is predicated upon the same grounds as the similar complaint made to instruction No. 11. No other exception was filed to instruction 12 than that it cast an undue burden upon the defendants. In this instruction the court recited the certain allegations in the defendants' answer which were pleaded affirmatively and which were directed to the alleged wrongful conduct of the plaintiff. In connection with such recital the court instructed that if the jury found these facts, then the "plaintiff was guilty of contributory negligence". The exception to this instruction in the lower court made no complaint of this recital of the defendants' allegations. The objection stated was "that the same cast undue burden upon the defendants in that the court failed to instruct the jury as to the matters herein relating to the contributory negligence of the plaintiff, the burden of proof was upon the plaintiff and the same was prejudicial to the defendants." What we have said above concerning the exceptions to instruction No. 11 is equally applicable here. There was no lack on the part of the court to instruct the jury that the burden of proof of freedom from contributory negligence was upon the plaintiff. This express instruction was not overcome impliedly by the use of the words, "if you find".

V. The verdict was for $13,419.15. It was urged in the motion for new trial, and is now urged here, that the verdict was excessive. The principal injury consisted in the crushing of the eighth dorsal vertebra. By the undisputed evidence the nature of the injury is very serious and the injury itself will be permanent in its effects. Plaintiff was confined to the hospital for many months and was deprived of the practice of his profession as a business for nearly a year. He is under a substantial degree of disability up to the present time and this will continue in greater or less degree permanently. There are features of the practice which were available to him before, which he is now unable to undertake. This applies to all important surgical operations. His earning capacity is thereby substantially diminished. We are unable to say that the amount of the verdict is excessive.

The judgment of the district court is accordingly affirmed.

FAVILLE, C. J., and STEVENS, DE GRAFF, MORLING, KINDIG, and WAGNER, JJ., concur.