A. POMERANTZ, Appellee, v. PENNSYLVANIA-DIXIE CEMENT CORPORATION, Appellant.

No. 41434.

JUNE 24, 1932.

Lappen & Carlson, for appellee.

Stewart & Hextell, for appellant.

STEVENS, J.—This is an action to recover damages alleged by appellee to have resulted to his left foot from coming in contact with some hot cinders and ashes on the premises of appellant located southwest of Valley Junction near the city of Des Moines and occupied as a cement plant, to which appellee had gone on the early morning of July 25, 1929, for the purpose of looking after and preparing some junk which he had previously purchased of appellant for removal and shipment in freight cars. The last is the third trial of this case in the district court. In the first trial, the jury failed to agree, but in each of the subsequent trials a verdict was returned in appellee's favor. A

motion for a new trial and a motion for judgment notwithstanding the verdict, based upon the alleged insufficiency of the allegations of the petition to state a cause of action, were sustained by the court. Upon appeal, the ruling on the motion for a new trial was sustained, but the ruling on the motion for judgment notwithstanding the verdict was reversed. See same title, 237 N. W., 443.

The principal proposition relied upon for reversal on this appeal is the alleged insufficiency of the evidence to sustain the verdict. A somewhat extended description of the premises and narrative of the facts is essential to a clear understanding of the situation and to a proper decision of the questions urged. The evidence as to the following matters, among others not so important, is without dispute.

The main building of the cement plant extends east and west for probably 300 or 400 feet, and is reached from the north over a public highway. There are extensive railway tracks on both the east and west sides of the plant. The place where the injuries complained of are alleged to have occurred is reached by way of a road constructed and maintained by appellant out of cinders and dry slurry, a semi-burned cement product. The road thus constructed and maintained extends along the east and west ends of the main building. The premises in the rear of this building are reached by means of this road, thus constructed and maintained. Appellee entered the premises over the road east of the building. At the southeast corner of the main building this road turns slightly to the southwest and then to the south to a point 300 or 400 feet from the building, where a portion of the junk was piled. Installed in one of the buildings is a rotary kiln 240 feet in length by 11 feet in width. The coal used for firing the kiln is known as powder coal and is ground very fine. Before grinding the coal, it is thoroughly dried. This is done in a drier which is located south of the road where it turns to the southwest after passing the southeast corner of the main building. The work of drying the coal is carried on by two shifts of twelve hours each, commencing at 6 A. M. and 6 P. M. respectively. The ashes and cinders that accumulate in the drier room from this process are removed by the use of wheelbarrows and placed in a pile forty or fifty feet from the building and south of the roadway above described. Several

wheelbarrow loads are removed by the party in charge during each twelve hours. At intervals, the yard foreman removes the pile of ashes and cinders from the place where they have been dumped from the wheelbarrows to some other part of the premises. The pile of ashes and cinders on the day in question was somewhat larger than is customarily permitted to accumulate. Some of the junk purchased by appellant was still in place and was too large to permit removal without being cut. The cutting of these large pieces of iron was being done by the use of an acetylene torch. An employee of appellant's was secured by appellee to do this work while off duty. This was done early in the morning and late in the evening.

Appellee arrived on the premises on the morning in question between 5 and 6 o'clock. Shortly before 7 o'clock, Gruber, who was cutting the iron for appellee, inquired as to the time. It was his duty to punch a time card at 7 o'clock. Appellee started up the road above described from a point 300 or 400 feet south of the main building to the office to find out what time it was. It is at this point that a sharp conflict appears in the testimony as to every material fact directly connected with and pertaining to the place at which the alleged injuries were received. Appellee testified that while he was in the act of walking up the road toward the main building at a point 125 or 150 feet south thereof, he stepped with his left foot into some hot ashes on the left side of the roadway and was severely burned; that he took off his shoe, called for help, and was assisted by two men employees of appellant's to the office. All of the witnesses called in behalf of appellant who testified on this point stated that appellee did not step into hot ashes in the road at all, but that when he reached the point where the ashes were piled, he attempted to walk across the pile, and that, while in this attempt, he stepped into some hot ashes or cinders, and his foot was burned. Two employees of appellant's who were in a position to observe his approach along the roadway testified that they saw him go upon the pile of ashes and quickly remove himself therefrom; that he took off his shoe and walked unaided and by himself to the office. The testimony that he walked without assistance is corroborated to some extent by another employee who was in the office, and who testified that appellee was alone when he entered. Appellee clung tenaciously to his version of

the facts, and at all times insisted that the ashes and cinders into which he stepped were in the roadway and that he was without previous notice or knowledge thereof. The foreman of each of the shifts testified that they removed ashes from the room in wheelbarrows and dumped them in the pile already referred to. They denied that they placed any ashes in the roadway at any time during the preceding twenty-four hours, or prior thereto. The yard foreman whose duty it was to remove the ashes from the premises testified that he had placed no ashes in the roadway for at least two weeks. Other witnesses testified that they saw no hot ashes in the roadway and knew of none that had been placed there. The premises are unfenced, but whether in charge of night watchmen does not appear.

There is also conflict in the testimony as to the extent of appellee's injuries. This question was clearly for the jury, and need not be given consideration herein.

Inadequacy of the testimony to make out a case in favor of appellee is urged upon the grounds that appellee failed to prove that appellant or any of its employees placed hot ashes in the roadway where appellee claims to have received the injuries, or that appellant or any of its employees knew or had notice of the existence of hot ashes in the roadway, or that such hot ashes had been in the roadway for such length of time as to charge appellant with notice thereof; that the uncontradicted evidence was that no ashes had been put upon the roadway within two weeks prior to the day of the accident. Appellee was an invitee upon the premises of appellant, whose duty it was to maintain its premises in a reasonably safe condition for his use in carrying out the purposes for which he went upon the premises. He had purchased a large quantity of iron and scraps of steel, amounting to 225 or 250 tons, of appellant, and by the terms of the purchase was required to remove the junk from the premises. He was there on the occasion in question for that purpose. All of the agents and servants of appellant who testified in this case knew that appellee would have to use the roadway which circled around the junk pile in going to and from the junk pile. Perhaps it should be stated that he arrived upon the premises and at the junk pile in a truck. It is true that no testimony was introduced by appellee tending directly to prove that appellant caused hot ashes to be placed in the road-

way. As stated, the evidence shows without dispute that large quantities of hot ashes and cinders were removed from the drier both day and night and dumped in a pile adjacent to the roadway, but some distance from the point where appellee claims he was injured. In fact, the road passed entirely around the pile of ashes. There were no other hot ashes in the immediate vicinity. If the jury believed the testimony of appellee that he was injured in the roadway substantially at the place as claimed by him, the inference would logically follow that they came from the premises of appellant.

Direct proof, in the light of the surrounding facts and circumstances, was not necessary. The decisive fact question in this case is: Where did appellee step his left foot into hot ashes with the result described? The evidence was in direct conflict on this point. It cannot well be said that appellee is mistaken in his testimony as to where the injuries were received. His claim that he was aided by two employees of appellant to reach the main building is contradicted. He could not have been merely mistaken as to how, whether by himself or by the assistance of others, he reached the office. The jury had a right in this condition of the record to believe the testimony of appellee. The determination of the credibility of the witnesses is peculiarly within the province of the jury. At least one witness testified that smoke was proceeding from the pile of ashes near the building. The testimony at this point is subject to the possible infirmity that one in broad daylight would hardly consciously and deliberately walk into a pile of smoking ashes and cinders. At least the jury had a right to weigh the testimony with this thought in mind.

Unless this court can say upon the record before us that the matters testified to by appellee are so completely negatived by the testimony introduced on behalf of appellant as to totally destroy its credibility, a question of law did not arise. The infirmity in appellee's testimony arises because of the strong contradictory showing made by appellant. If appellee was injured at the point in the roadway claimed by him, some servant or agent of appellant's must have placed the hot ashes therein. At least such inference was justified from all of the facts and circumstances detailed in the evidence. This court cannot, therefore, say that the verdict of the jury is without support in the

evidence. The absence of direct testimony as to the essentials of appellee's case is sufficiently supplied by the almost necessary inference from the testimony. No doubt important and material matters shown in the testimony have been omitted from the foregoing narrative. Nothing would, however, be gained by setting them out in greater detail. There is considerable discussion in appellant's argument of the *res ipsa loquitur* doctrine. In view of the conclusion reached, we need not discuss this subject.

It is the conclusion of the court that the judgment must be and it is affirmed.—Affirmed.

WAGNER, C. J., and FAVILLE, DE GRAFF, and ALBERT, JJ., concur.