[File No. 6984]

GIDEON KRUEGER, Respondent, v. NORTH AMERICAN CREAMERIES INCORPORATED, a Corporation and Ben Pucket, Appellants.

(27 NW2d 240)

Opinion filed February 22, 1947. Rehearing denied May 14, 1947

*Cox, Cox & Pearce,* for appellants.

*J. K. Murray,* for respondent.

Burke, J. In this action plaintiff sought to recover for injuries alleged to have been received by him while riding as a passenger upon a freight elevator in a warehouse leased and operated by the defendant, North American Creameries. He alleged that the defendant, North American Creameries had been negligent in failing to keep the elevator in a condition which made it safe for use and in employing an incompetent and improper person to operate it. As to the defendant, Ben Pucket, plaintiff alleged only that he operated the elevator in a careless and negligent manner. The defendants answered separately, denying generally all of the allegations of the complaint. Trial of the case resulted in a verdict and judgment for the defendants. Thereafter, upon motion by the plaintiff, the trial court made its order granting a new trial. Defendants have appealed from that order.

The order granting a new trial sets forth: "This order is based upon the following grounds, among others:

1. Errors of law occurring at the trial.

2. Insufficiency of the evidence to justify the verdict and the judgment of the court, and that the verdict and judgment are against law.

3. Newly discovered evidence material to the plaintiff which he could not with reasonable diligence have discovered and produced at the trial."

In his memorandum opinion however, the trial judge makes it clear that the principal ground for the order was his conclu-

sion that the verdict and judgment were contrary to the preponderance of the evidence. We therefore think it proper to consider first, appellant's specification that the trial court manifestly abused its discretion in granting a new trial upon that ground. Appellant recognizes, and properly so, that a motion for a new trial, because of the insufficiency of the evidence, is addressed to the sound discretion of the trial court, and its decision thereon will not be set aside unless there has been a manifest abuse of discretion. This rule is firmly established in the decisions of this court. Johnson v. Patterson, 67 ND 132, 270 NW 97, Dakota Digest, Key Number 979 (1), 979 (2).

At the time plaintiff was injured he was a farmer. On the evening of August 3, 1943, he had come to Carrington, his market place, upon a shopping trip. Among other things he wished to buy some ground turkey feed. To purchase this feed he went to the plant of the defendant North American Creameries. He arrived at the creamery after regular business hours and found the night man, the defendant Ben Pucket, in charge. Pucket's duties included the making of sales to persons who came after regular business hours and he had thus accommodated the plaintiff upon several previous occasions. Plaintiff inquired if he could buy some turkey feed. Pucket informed him that he could if plaintiff would take him to a warehouse in another part of town where the particular type of feed was stored. Plaintiff agreed and they drove to the warehouse together. It was a one story building with a basement. It contained a freight elevator to lift heavy loads from the basement to the main floor. Upon arriving, plaintiff and Pucket entered the building together. Plaintiff proceeded to the basement by way of a stairway and Pucket brought the elevator down to the basement level. In the basement Pucket and plaintiff loaded ten one hundred pound sacks of feed upon a two wheel cart and together they pushed it upon the elevator. It is conceded that Pucket could not have pushed the loaded truck upon the elevator without plaintiff's help. For the trip back to the main floor both men entered the elevator.

At this point in the narration of facts it seems proper to

consider the nature of the relationship of the plaintiff to the defendant, North American Creameries. As to the evidence set forth above there is no conflict. Pucket and the plaintiff differ, in some respects, as to what they said to each other but they are in complete agreement upon what they did, and upon the fact that what they did was in accord with the common practice in the community. Upon this evidence the trial court held that, at the time and place in question, plaintiff was the invitee of the North American Creameries. In our view this holding was correct. There is a dispute as to whether there was an express invitation. The plaintiff said there was and Pucket said there was not. However, when Pucket was asked, "Did you think it strange that he (the plaintiff) was doing that without you asking him?," he replied, "No it wouldn't be strange, he had done that before at the plant; he would go along with me and help get it." Whether plaintiff was expressly invited or not, it is apparent that Pucket expected him to enter the premises and understood that no express invitation was necessary. Furthermore plaintiff's purpose in entering the premises was for the mutual benefit of himself and the occupant. In our opinion these circumstances give rise to an implied invitation. 38 Am Jur 760, Negligence, § 99; 45 CJ 812; Printy v. Reimbold, 200 Iowa 541, 202 NW 122, 205 NW 211, 41 ALR 1423; Shawnee v. Drake, 69 Okla 209, 171 P 727, LRA1918D 810; Pomerantz v. Pennsylvania-Dixie Cement Corp. 214 Iowa 1002, 243 NW 283.

As a general rule the occupant of a building has the duty of exercising reasonable or ordinary care to avoid accidents or injuries to invitees entering upon the premises. 38 Am Jur 760, Negligence, § 99; 45 CJ 823, 824. The duty of an occupant of a building to exercise ordinary care on behalf of invitees also applies to the maintenance and operation of freight elevators. In Ford v. Crigler, 24 Ky L R 56, 74 SW 661, the court said:

"These appellees, being in possession of and in control of this storehouse for their benefit, were bound to use care and diligence, proportioned to the risk, to keep their premises and

elevator at least reasonably safe for the access and use by those coming there by their invitation, express or implied, on any business to be transacted or permitted by them, or for other purpose beneficial to them."

In Le Foe v. Corby, 38 App DC 54, it was said:

"While the operator of a freight elevator is required to use only reasonable care and diligence to keep it safe, the inherently dangerous character of such an instrumentality will be considered in the determination of the question of what amounted, in a given case, to such reasonable care and diligence."

See also Mueller v. Phelps, 252 Ill 630, 97 NE 228; Friedberg v. Watson, 254 NY 562, 173 NE 867; Dean v. Koolish, 212 Iowa 238, 234 NW 179; Stratton v. J. J. Newberry Co. 117 Conn 522, 169 A 56; Shearman & Redfield, Negligence Rev ed § 800 p 1834.

We turn to the circumstances of plaintiff's injuries. The elevator in the defendant creamery's warehouse was an ordinary freight elevator. The car consisted of a wooden platform set in a metal frame. It was protected upon the sides by metal screens but was open at both ends. The main frame members upon each side projected well above the metal screens and were joined overhead by two parallel I beams. Between the I beams was a multiple sheaved pulley which was fastened to the beams by means of a shaft passed through its center and fixed at each end in housings set in the beams. The cables which raised and lowered the elevator operated within this pulley. The elevator was what is commonly known as a cable or rope operated elevator. At the front of the elevator shaft and on the right hand side was an endless steel cable which ran over a pulley at the top of the shaft and another at the bottom. A pull on one side of the cable actuated the motor switch which started the elevator upwards. A pull on the other side, or on the same side but in the opposite direction started it downwards. To stop the car, once it was in motion, it was only necessary to return the cable to a point between the two extreme positions. Affixed to the elevator was an automatic stopping device. This consisted of two steel balls bolted to

the control cable and a U shaped fork fastened to the elevator car in such a manner that as the elevator ascended or descended the control cable was contained between the tines of the fork. The steel balls were too large to pass between the tines, so that when the fork attached to the moving elevator engaged one of the balls on the cable it automatically moved the cable in the direction necessary to throw the motor switch into the neutral position and stop the elevator. This device was adjusted (by the position of the balls on the cable) to stop the elevator ascending, at the ground floor level and descending, at the basement level. In addition to the automatic stopping mechanism, the elevator was equipped with two automatic safety devices, one of which was known as the "overtravel" and the other as the "slack cable" device. It will add nothing to this opinion to explain the mechanism of these devices in detail. It is sufficient to say that the "overtravel" was designed to stop the elevator by actuating the motor switch in the event that the automatic stopping mechanism failed to work. The slack cable device was designed as a brake to stop the elevator car if for any reason it started to descend at a greater speed than normal.

After plaintiff and the defendant, Pucket, had entered the elevator with the load of turkey feed, Pucket operated the starting mechanism setting the elevator in motion. Relying on the automatic stopping device, he left the vicinity of the control cable. For some reason this device did not work. After reaching the main floor, the car continued upwards crashing into the overhead mechanism and then dropping to the basement. In the fall plaintiff was injured.

The evidence thus shows the failure of three separate and independent safety devices so quickly successive as to be substantially simultaneous. There is also testimony that the U shaped fork upon the automatic stopping device was not standard equipment and that the cable could escape from between the tines of the fork with the result that the device would fail to function. The precise cause of the accident was not shown. Three automatic devices failed to operate but the reason they failed remains a mystery. Does this evidence make out a prima

facie case of negligence? We think it does. We think the facts logically give rise to a compelling inference that the elevator was not maintained with reasonable care. In Rumetsch v. John Wanamaker, Inc. 216 NY 379, 384, 110 NE 760, LRA 1916C 1245, 12 NCCA 926, it was said:

"Reasonable prudence and care on the part of the defendant required an inspection of the elevator with such frequency and by persons with such knowledge and experience as should be reasonably required in view of the danger and risk involved in running an elevator and carying passengers invited by the owner to enter therein."

To sustain an hypothesis of reasonable care in this case we must assume that there were no observable defects in any of the three automatic devices at the time of an inspection made within a reasonble time by an experienced inspector. While this assumption is a possibility, it does not appeal to us as a reasonable probability. We think the more reasonable inference from the facts is that the "overtravel" and the "slack cable" devices had not been in working order for some time prior to the accident and that a test by an inspector with adequate experience would have disclosed the fact. Conceding that reasonable men might differ as to the force of this inference it is nevertheless clear to us that plaintiff established a prima facie case.

The only evidence of the exercise of reasonable care adduced by the defendant, North American Creameries, was testimony that the elevator was repaired within a thirty day period before the accident. It is clear from the testimony that the man who made the repairs was a general mechanic in the employ of the creamery and not an experienced elevator man. There is no evidence as to the extent of the inspection nor as to the character of the repairs that were made. The evidence discloses that after the accident the creamery employed experienced and expert elevator mechanics to make the necessary repairs on the elevator. The record is silent as to the condition in which they found the several safety devices after the accident. None of

these men was present to testify although the creamery company did present the testimony of an expert elevator man who said he didn't have any idea as to the cause of the accident "because I didn't see the equipment after the accident and it was repaired since and not by us." This testimony points out the materiality of evidence as to the condition of the elevator after the accident. Presumably it was within the power of the defendant creamery to produce that evidence and there is no explanation for its failure to do so. In Wyldes v. Patterson, 31 ND 282, 321, 153 NW 630, we said:

"It is a well settled rule of evidence, that the failure or refusal of a party to produce evidence particularly within his knowledge and control, and which would have an important bearing upon the facts in dispute, warrants the inference that it would be unfavorable to his contention."

In view of the strength of the logical inference of negligence in this case and in view of the almost total failure on the part of the defendant, North American Creameries, to rebut that inference we have no doubt whatever in holding that the granting of a new trial as to this defendant was well within the limits of the judicial discretion of the trial court.

As to the defendant, Pucket, a different situation exists. As to him no specific act of negligence was alleged. There was only the general allegation that he operated the elevator in a careless and negligent manner. There is no proof of any negligence on his part unless his reliance upon the automatic stopping device was negligence. We see nothing in the record to justify this conclusion. Although this was the first time he had operated this particular elevator, he had operated an elevator in the main plant of the creamery which was equipped with a similar device which was uniformly effective.

The order of the District Court granting a new trial is therefore affirmed as to the defendant, North American Creameries, and reversed as to the defendant, Pucket.

CHRISTIANSON, Ch. J., and NUESSLE, BURR and MORRIS, JJ., concur.