Mary C. OLSON, Plaintiff and Respondent,

v.

S. W. THOMPSON, as Highway Commissioner of the State of North Dakota, Defendant and Appellant.

No. 7540.

Supreme Court of North Dakota.

Jan. 18, 1956.

Rehearing Denied Feb. 3, 1956.

Leslie R. Burgum, Atty. Gen., Vernon R. Pederson, Sp. Asst. Atty. Gen., Ray R. Friederich, State's Atty., Conrad J. Ziegler, Asst. State's Atty., Rugby, for appellant.

L. L. Butterwick, Minnewaukan, for respondent.

GRIMSON, Judge.

The controversy involved in this action arises out of the laying out in 1953 of state highway No. 3 through Pierce County, across the farm of the plaintiff. Plaintiff's farm consisted of the W½ and the NE¼ of the SW¼ of Section 20, and the NW¼ of the NW¼ of Section 29, all in Township 153 North, Range 72 West, a total of 160 acres. The strip of land taken for the highway crosses the northeast corner of the NW¼ of the NW¼ of Section 29, totaling 2.50 acres, and runs diagonally in a northwesterly direction, across the SW¼ of the SW¼ of Section 20, totaling 6.43 acres.

The county commissioners of Pierce County were unable to make a purchase of this right of way from the plaintiff and in order to obtain title proceeded under Chapter 24–07, NDRC 1943. After a hearing they made awards of damages for the land taken in the NW¼ of NW¼ of Section 29 as follows:

| | |
|---|---:|
| "For value of land taken, 2.50 acres at $30.00, | $75.00 |
| Damage to fence, | 20.00 |
| Damage to trees—12– | 9.00 |
| For damages to adjoining remainder of land belonging to same owner, being decrease in market value of such adjoining land not taken | $—— |
| Less benefit to be derived to such land not taken by establishment of highway, | $—— |
| Allowance for land not taken, Damage to garden & all other damages | $75.00 |
| Total awards, | $179.00" |

and for the land taken in the SW¼ of SW¼ of Section 20, as follows:

"For value of land taken, 6.43 acres at $15.00 $96.45
For fence and all other damages, 50.00
For damages to adjoining remainder of land belonging to same owner, being decrease in market value of such adjoining land not taken, $——
Less benefit to be derived to such land not taken by establishment of highway, $——
Allowance for land not taken, $——
Total awards $146.45"

The plaintiff was dissatisfied with the amounts so awarded and appealed to the district court. Upon trial in district court the jury brought in a joint verdict for the plaintiff as follows:

"1. For the land actually taken, $171.45
2. For the resultant damages, if any, to the remainder of the land, $——
3. Special damages, if any, for the destruction of the spring and any other damage, if any, as may have been suffered, $154.00"

The plaintiff immediately moved for a new trial on the following grounds:

"1. The insufficiency of evidence to justify the verdict and that it is against the law;

"2. That the verdict is so inadequate as to be a plain disregard by the jury of the instruction of the Court and was rendered under the influence of prejudice."

The court granted the motion and

"Ordered that the verdict herein be set aside and a new trial granted upon the ground and for the reason that the verdict was inadequate to a degree incommensurate with substantial justice and was not justified by the evidence."

From that order the defendant appeals, assigning as error that the court erred in making the order in that it was based upon an erroneous view of the facts and of the law, and "That the order setting aside the verdict and granting a new trial based upon the testimony and the evidence produced is an abuse of the discretion of the court."

■ The court in its memorandum opinion states that its action is based upon Section 28–1902, Section 6, NDRC 1943, which provides that the court may grant a new trial upon the "insufficiency of the evidence to justify the verdict or the decision, or that it is against the law." The court cites Haser v. Pape, 78 N.D. 481, 50 N.W.2d 240, 241, in which this court held that a new trial may be granted under that provision, "Where the evidence discloses that damages awarded by a jury are inadequate to a degree incommensurate with substantial justice."

■■ This court has repeatedly passed upon the matter of granting a new trial by the district court. In Crossen v. Rognlie, N.D., 68 N.W.2d 110, 112, this court said:

"A new trial on the application of the party aggrieved may be granted on the ground of the insufficiency of the evidence to justify the verdict or that it is against the law. Section 28–1902, subdivision 6, NDRC 1943. It has been repeatedly held by this court that the question of whether a new trial should be granted because of the insufficiency of the evidence is within the sound discretion of the trial court. Pengilly v. J. I. Case Threshing Machine Co., 11 N.D. 249, 91 N.W. 63, 12 Am.Neg.Rep. 619; Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11; Haslam v. Babcock, 71 N.D. 363, 366, 1 N.W.2d 335; Burdick v. Mann, 60 N.D. 710, 236 N.W. 340, 82 A.L.R. 1443; Baird v. Clooten, 60 N.D. 699, 236 N.W. 356; Martin v. Parkins, 55 N.D. 339, 213 N.W. 574; Kohler v. Stephens, 74 N.D. 655, 24 N.W.2d 64.

It is only when the trial court has abused its discretion that its ruling will be disturbed. Baird v. Clooten, 60 N.D. 699, 236 N.W. 356; Pengilly v. J. I. Case Threshing Machine Co., 11 N.D. 249, 91 N.W. 63, 12 Am.Neg.Rep. 619; Ross v. Robertson, 12 N.D. 27, 94 N.W. 765; Johnson v. Patterson, 67 N.D. 132, 270 N.W. 97; Krueger v. North American Creameries, 75 N.D. 264, 27 N.W.2d 240; Kohler v. Stephens, 74 N.D. 655, 24 N.W.2d 64; Martin v. Parkins, 55 N.D. 339, 213 N.W. 574; Baird v. Unterseher, 57

N.D. 885, 224 N.W. 306; State v. Hummel, 73 N.D. 308, 14 N.W.2d 368.

We must, therefore, consider the evidence to determine whether the trial court abused its discretion. The following plat Ex. 1, in the evidence, shows the layout of the highway across plaintiff's farm.

The undisputed evidence discloses that the plaintiff and her late husband homesteaded this land and have lived on it ever since. They have developed it mainly as a stock farm. About 70 acres are suitable for cultivation and are now used to raise feed grains. The plaintiff and her husband built a substantial, five room house, 16 x 16 feet with a kitchen extension 14 x 14 feet, and having an upstairs and basement. The house was built on a stone foundation, and equipped with a hot air furnace. It had electricity for both light and power, was painted and in good repair. It is now occupied by the plaintiff as a home. They built a barn 30 feet wide, and 50 feet long, with 12 foot posts, and peak 27 feet from the ground. It had a gambril roof, with cedar shingles, a concrete foundation, concrete gutters and cow stands. Then they built a combined granary and garage 16 feet wide, 22 feet long, with concrete foundation. It had a pitch roof with cedar shingles. All buildings were at the time of this action in good repair. A grove had been planted to the east and south of the house. They had a garden between the house and the grove, and had built a dam for a pool to retain water for the garden. The highway was laid out through the northeast corner of the NW¼ of the NW¼ of Section 29, cutting through the grove within 200 feet of the house, taking part of the garden, destroying the dam beside it, and leaving a triangular area, .7 of an acre in the southeast corner separated by the highway from the rest of plaintiff's land. The highway then cut diagonally across plaintiff's pasture which covers all of the SW¼ of the SW¼ of Section 20 and was fenced, leaving 8.6 acres southwest of the highway separated from 23 acres northeast of the highway. The fences at the entrances and exit of the highway were destroyed and new fences on each side of the highway were necessary. The witnesses estimated the cost of those fences from $300 to $750. Plaintiffs claimed that there was a natural spring of water in the pasture which they had developed by clearing off some surface so as to get to the sand through which they claimed the water came, and which had made a fine watering place for the stock and that there had continually been water in this spring through all the dry years sufficient to water their stock. The value of this spring to a stock farm was estimated up to $1,000. The defendant's witnesses, however, claimed that this was just an ordinary water hole. The highway was laid over this spring, destroying it entirely. The pasture and hay land was valued at from $2 to $15 per acre and the cultivated land up to $35 per acre without any improvements. Some of the plaintiff's witnesses testified that the consequential damages were from $8 to $10 per acre. The defendants, however, claimed that the benefits to the farm of the highway were worth from $5 to $18 per acre. The higher figures, except in this last instance, were given by the plaintiff's witnesses who were neighbors, well acquainted with the premises. The lower figures were given by the defendant's witnesses, whose testimony was more general.

It will be noticed that the verdict brought in by the jury is in the exact amount of the total award of the county commissioners. The commissioners allowed $75 for the land taken in Section 29, and $96.45 for the portion taken in Section 20, or a total of $171.45, which is the amount of the verdict for the land taken. The commissioners allowed $104 for damages to the land taken in Section 29, and $50 for the damages to the land in Section 20, a total of $154 which is the allowance for damages made by the jury.

Two of the commissioners of Pierce County who made the allowances were witnesses for the defendant. One of them, Peter Hoffart, testified:

"Q. And you describe the property that you appraised at $15.00 per acre. A. Well, you know we had one system that we appraised prairie land at $15.00.

"Q. That is the price you have been using in appraising the right of ways? A. To be fair to all of them. * *".

After describing that land as common pasture land he was asked what other fac-

tor he considered and answered, "We gave him some damage for trees and for the little fence that he had there and that is about all the damage that I could see that we done there?

"Q. You have actually never appraised the Olson land other than the part you were purchasing for a right of way, is that right? A. Yes.

"Q. Have you appraised land that you felt is of the same or comparable value or quality? A. There is quite a bit all along the line, about the same quality and some better land than that yet, and we just gave them $15.00 and they were satisfied.

*   *   *   *   *   *

"Q. As a matter of fact you were valuing the land without giving any to the buildings? A. That is right.

*   *   *   *   *   *

"Q. And you didn't consider the value of the barn at all? A. No, I thought we wouldn't affect it and so we didn't consider it.

"Q. The granary? A. No.

"Q. Nor the miles of fencing he had on the farm? A. We didn't destroy any fence. That always sells with the farm regardless what you got on it.

*   *   *   *   *   *

"Q. Heretofore you testified $15.00 an acre was your usual value you appraisers put on it. A. Yes.

"Q. And you put that whether there were any buildings or not? A. That is right."

Nick Axtman, another one of the commissioners, testified:

"Q. In connection with other county commissioners you were responsible for the awards determined and made in accordance with Exhibits 2 and 3? A. Yes.

"Q. In Section twenty would you tell me what value you placed upon the land? A. Fifteen Dollars an acre.

*   *   *   *   *   *

"Q. How did you arrive at the value of $15.00 per acre when you made that appraisal? A. Well, it is prairie land and that is what we allow for prairie land or fenced or hay meadow at that time.

*   *   *   *   *   *

"Q. Did he object or was he worked up about the fact that the road was going to go through his farm right where this water hole was located? A. Well, he mentioned the water hole. That is correct.

"Q. But did you consider this was going to be a serious damage to his pasture or something that could not be replaced? A. No.

*   *   *   *   *   *

"Q. Well, now, when you appraised beyond the coulee, what value did you place on ordinary field land? A. Tillable land?

"Q. Yes. A. Thirty Dollars.

"Q. On ordinary tillable land, $30.00? A. Yes.

"Q. And pasture land at fifteen dollars? A. That is right.

"Q. And no particular consideration given, special consideration given, to the farm you were looking at, whether it had buildings or didn't have buildings? A. Well, the land was always sold and not the buildings. The buildings go with it.

*   *   *   *   *   *

"Q. Any farm you looked at? A. Well, no.

"Q. If a piece of land had a couple of buildings on it and was within your thirty dollar classification and you had another farm a little further on that had no buildings but the same kind of land, you gave both of them thirty dollars an acre? A. That is right.

*   *   *   *   *   *

"Q. As a matter of fact you didn't take the value of the buildings into consideration at all when you fixed the value of fifteen dollars an acre on the land, did you? A. No, we appraised the land, not the buildings."

The evidence shows that plaintiff's property had been developed as a farm unit for the raising of stock. That farm unit included not only the residence but also the barn, granary, garage, fences, watering place and everything necessary for the development of such a farm enterprise. The farm was established, maintained and operated as a single unit. The buildings were a part of the realty and certainly added value thereto. The improvements made it possible to operate the farm as an economic unit. In the evidence, however, the witnesses testified separately to the value of the improvements and to the value of the land without improvements. There was no evidence of the value of the farm as a whole.

The question is raised as to whether the value of a farm unit like that here involved may be proven by showing the value of the buildings and improvements separately from the value of the bare land. Section 32–1522, NDRC 1943, provides that the jury must ascertain and assess damages as follows:

"1. The value of the property sought to be condemned and all improvements thereon pertaining to the realty and of each and every separate estate or interest therein. If it consists of different parcels, the value of each parcel and each estate and interest therein shall be separately assessed;

2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned and the construction of the improvement in the manner proposed by the plaintiff;

"3. * * *

"4. * * *

"5. * * *."

In Lineburg v. Sandven, 74 N.D. 364, 21 N.W.2d 808, 809, this court held:

"Where a highway is established across a farm on which there is a set of permanent farm buildings, which farm including the buildings thereon constitutes, and is maintained and operated as, a single unit; and a part of such farm is taken for highway purposes and the buildings remain upon the part of the land not taken, the land and the buildings upon it constitute one piece of property, and the value of the farm before the severance is to be ascertained by considering the property as a whole."

In 4 Sutherland, Damages, 4th Ed., p. 4129, "Land and buildings upon it constitute but one piece of property and benefits and damages are to be ascertained by ascertaining the effect upon it as a whole."

In 2 Lewis, Eminent Domain, 3d Ed., Section 726, p. 1270, it is said:

"The value of the land with and without the improvements may be shown but not the improvements apart from the land."

In 18 Am.Jur. 892, it is said:

"The general view is that the amount of recovery is to be measured by the value of the land, together with the improvements and fixtures thereon, viewed as a whole and not separately. To determine the market value as vacant property alone, and then to ascertain to what extent, if any, the improvements enhance such value, is not allowable under a statute requiring assessment of the value of the property sought to be condemned and of all improvements thereon pertaining to the realty."

In 4 Nichols on Eminent Domain, Sec. 13.11(2), p. 207:

"An owner is not entitled to have the buildings valued as they stand on the

land as separate items in addition to the market value of the land. On the other hand, neither is the condemnor entitled to have the buildings valued apart from the land merely for purposes of removal. The proper measure of damages is the market value of the land with the buildings upon it." Note 33 on p. 208 cites cases from 14 states as supporting this principle, and 3 states contra.

Clearly the rule adopted in the Lineburg v. Sandven case is to the effect that the valuation of the buildings should be considered in connection with the farm as a whole and not separately. That rule is supported by the weight of authority.

In the instant case the valuations of the buildings separately from the value of the farm were received in evidence without objection. Later that method of proving the value of the property was questioned by the defendant and is now raised in connection with the assignment that the court erred as a matter of law and of fact in granting a new trial on the theory that adding the value of the buildings separately to the value of the farm produced excessive valuation of the property which in comparison with the verdict seemed to the court wholly inadequate. Even so, the evidence does not warrant conclusion that the court erred in granting the new trial.

In addition to the value of the land taken which per acre must be the value of the farm as found by the jury, the jury must also find the damages that will accrue to the remaining property by the taking of that strip for the highway. The value of those damages was allowed by the jury at $154. As separated by the board of county commissioners that was for the fence, the trees and the garden and all other damages on the NW¼ of 29, $104 and for the fence and all other damages on the SW¼ of the SW¼ of 20, $50. The evidence showed that the highway was laid out across plaintiff's yard within 200 feet of the house, injuring the grove and the garden, cutting out a triangular .7 acre of his land besides the right of way. These invasions of the yard around plaintiff's residence are ele-

ments to be considered in finding the damages. It may be a question in this automobile age whether or not it is desirable to live in the "house by the side of the road." Then there is undoubtedly damage to the plaintiff to have her pasture cut in two. The evidence shows that the fencing required on each side of the highway cost more than the $20 allowed. The destruction of the spring, if the jury found it to be a natural, permanent spring, as plaintiff claims, could hardly be recompensed, together with the fence, at $50. Clearly, there is evidence, irrespective of the value of the bare land plus the value of the improvements, to warrant more allowance for damages than was found by the jury.

We have in the instant case very conflicting evidence on values. We have the testimony of the county commissioners who made the original appraisal. In making that appraisal they had failed to give any consideration to the value of the improvements and little consideration to the damages. The jury adopted their findings of value and damages. Some evidence was received that the pasture land, without improvements was worth $15 and tillable land without improvements $30 per acre. Those were the values found by the jury indicating that they may not have considered the improvements.

It was the duty of the jury to determine, not only the value of the land taken, including improvements, but also whether the plaintiff suffered any detriment to his farm unit by the laying out of that highway through his farmyard and pasture and to return a verdict in an amount sufficient to compensate for the detriment, if any. Haser v. Pape, 78 N.D. 481, 50 N.W. 2d 240.

The district judge was in the best position to determine whether the verdict the jury returned on those questions was in accordance with justice. He had the advantage of observing the witnesses and their demeanor, and even the effect upon the jury of their testimony. He had knowledge of all matters incident to the trial itself. These matters he could take into consideration in the exercise of his discre-

tion in passing on the motion for a new trial.

In Crossen v. Rognlie, N.D., 68 N.W.2d 113, it is said:

"The district court may grant a motion for a new trial where there is substantial conflict in the evidence if in its discretion it finds that the evidence does not justify the verdict. Ross v. Robertson, 12 N.D. 27, 94 N.W. 765; Haslam v. Babcock, 71 N.D. 363, 366, 1 N.W.2d 335. * * *

"When the court has granted a new trial this court will not disturb such decision if the evidence shows that the trial court exercised legal discretion in the matter. The only question in such cases for the appellate court to consider is whether or not the trial court abused its discretion. If not, its decision will not be disturbed. (Citing cases.) * * *

"To reverse an order granting a new trial because of the insufficiency of the evidence, this court must be convinced that there are strong and cogent reasons for concluding that the trial court was not exercising legal discretion in weighing the evidence. Durick v. Winters, 70 N.D. 592, 296 N.W. 744; Martin v. Parkins, 55 N.D. 339, 346, 213 N.W. 574; Butler v. Aetna Ins. Co., 64 N.D. 764, 256 N.W. 214."

In Haser v. Pape, 78 N.D. 481, 50 N.W.2d 240, 241, it was held that "Appellate courts are more reluctant to interfere with the action of a trial court in granting a new trial than where a new trial has been denied."

Considering the evidence and circumstances shown in the case at bar we have come to the conclusion that the district court did not abuse its discretion when it granted a new trial.

The order of the district court is affirmed.

BURKE, C. J., and JOHNSON, SATHRE, MORRIS, JJ., concur.